## HUGHES AND DIAL v. SHEAFF.

1. Mortgage AND CONDITIONAL SALE: Cases involving the question of difference between a mortgage and conditional sale, must each be determined upon its own peculiar circumstances. The *intention* of the parties is the true test, and must be collected from the condition and conduct of the parties, as well as from the face of the written contract.

2. ———— PRESUMPTION IN FAVOR OF MORTGAGE. While in all doubtful cases the law will construe the contract to be a mortgage rather than a con-

| | |
|---|---|
| 19 | 335 |
| 87 | 169 |
| 19 | 335 |
| 114 | 675 |
| 114 | 676 |
| 114 | 678 |
| 19 | 335 |
| 131 | 431 |
| 19 | 335 |
| f132 | 365 |

ditional sale, yet, when a conditional sale is clearly established, it will be enforced.

3. —— WHERE DEBT CONTINUED. Where the relation of debtor and creditor is continued between the parties as to the consideration of the conveyance, the transaction will be treated as a mortgage.

4. —— WHEN EXTINGUISHED. But when the debt is extinguished by a fair agreement, and the grantor has the privilege merely of refunding, if he pleases, by a given time, and thereby entitles himself to a reconveyance, the transaction is a conditional sale, and the equity of redemption does not continue.

## *Appeal from Scott District Court.*

### FRIDAY, JANUARY 5.

ON and prior to the 8th of May, 1858, H. R. Claussen was the owner in fee of certain mill property situated in the town of Lyons, in Clinton county, upon which the defendant, Sheaff, had a mortgage made by Claussen to secure the sum of five thousand dollars. About this time plaintiff entered into negotiations with Claussen for the purchase of the mill property, and on the 12th of the same month, the trade was concluded, for the consideration of fourteen thousand dollars, to be paid in part by the assumption of the Sheaff incumbrance. The deed was made by Claussen on the 15th, but prior thereto, and pending the negotiations, the mortgage to Sheaff was canceled and Claussen made a trust deed to secure the same indebtedness. Claussen's deed to plaintiffs refers to this trust deed, and provides that they are to meet and discharge the same, except certain interest, which Claussen afterwards paid.

In July, 1858, defendant's debt being due and unpaid, according to the terms of the trust deed, the property was advertised to be sold on the 13th of August. On the day before the sale was to take place, the parties (plaintiffs and defendant) met, and agreed that it should be stopped; plaintiffs executed to the defendant an absolute deed for the property, and the trust deed and indebtedness were

discharged. Defendant at the same time leased the property to plaintiffs until January, 1859, for a sum named, and further agreed to *sell* them the property on that day, for a sum stated, which was equal to the amount of his claim with interest. He at the same time lodged with J. W. Stewart, Esq., a deed, to be held as an escrow and delivered if plaintiffs should strictly comply with the conditions agreed upon at the time named, time being declared the essence of the contract.

Plaintiffs did not pay the money or any part of it, and soon thereafter they surrendered the possession, and one of them made a new contract of lease for the mill until the 1st of March, and at that time made a final surrender; the rent, under the last contract, being paid by the sale to Sheaff of some property about the mill.

In August, 1859, Sheaff sold and conveyed the property to Carpenter, for seven thousand dollars, who purchased without notice or knowledge of plaintiffs' equities. This action was commenced in July, 1860, claiming that the property was sold to Carpenter for much below its real value; that plaintiffs had a right to redeem on paying the debt secured by the trust deed, with interest; that the transaction of August 12, 1858, amounted to a mortgage, or that the deed was made by them as further security, and no more; that defendant obtained the conveyance of that date by fraud; that an account should be taken, and defendant required to pay them the difference between the value of the property, with the rents realized, and the trust debt with interest. The answer denies all fraud and insists that the transaction was not a mortgage, but a conditional sale. Bearing upon these claims of the respective parties, there is in the record a large amount of testimony. The case was referred to the Hon. J. W. Drury, who found the facts and recommended the dismissal of the bill. This

finding, against plaintiffs' objection, was confirmed in the District Court, from which order they appeal.

*Putnam & Rogers* and *D. C. Nash* for the appellant.

*John N. Rogers* made an oral argument, discussing the evidence, and filed a printed one stating propositions of law and citing authorities, as follows:

I. The conveyance by plaintiffs to defendant, Aug. 12th, 1858, must be regarded either as a mortgage or as a conditional sale; *i. e.*, a sale with a privilege of repurchase. If its primary object was to secure the payment of money, it was a mortgage. If that object was a sale and conveyance, the absolute and present divesting of the plaintiffs of all interest in the property and the conferring of it upon Sheaff, with a mere right in plaintiffs to repurchase, at their option, within a limited time, it was a conditional sale. In the latter case (assuming the validity of the transaction), plaintiffs not having exercised the right to repurchase within the time limited, have no claim for relief. In the former case, nothing but foreclosure or subsequent release by plaintiffs could deprive them of their equity of redemption; and defendant having put the property beyond their reach by his sale to Carpenter, must account to them for its value. *Bloodgood* v. *Zeily*, 2 Caines' Cas., 124; *Heister* v. *Maderia*, 3 Watts & Serg., 384; *Bissell* v. *Bozman*, 2 Dev. Eq., 229–234.

II. Every conveyance intended to secure the payment of money (whatever its form or guise), is in equity a mortgage. And when such is its character, no agreement of the parties made at the creation of the security, limiting or restricting the right of redemption, has any force or validity whatever, in a court of equity. 4 Kent Com., 142, 143, 158, 159; 2 Lead. Cas. in Eq., Part 2d, 432; *Henry* v. *Davis*, 7 Johns. Ch., 40; *S. C.*, 2 Cow., 324; *Trucks* v. *Lind-*

*sey*, 18 Iowa, 504; *Newhall* v. *Burt*, 7 Pick., 157; *Skinner* v. *Miller*, 5 Litt., 84; *Kunkle* v. *Wolfsberger*, 6 Watts, 126; *Batty* v. *Snook*, 5 Mich., 231.

III. In the present case, we do not claim that the parties *intended a mortgage*; but that their intention (or rather the intention of defendant, in which plaintiffs were compelled to acquiesce), was to create a security which should become irredeemable by mere lapse of time; which equity will not permit. See authorities under the last point, and especially *Newhall* v. *Burt*, 7 Pick., 157.

IV. If a conveyance be given as security for the payment of money, it is not necessary, in order to make it a mortgage, with the full right of redemption incident thereto, that there should be any collateral *personal* liability to pay the money. Much less is a bond, note or covenant to pay, essential to a mortgage. *Kenyon* v. *Kelsey*, 10 Iowa, 443; *Rice* v. *Rice*, 4 Pick., 349; *Bentley* v. *Phelps*, 2 Wood. and Min., 426; *Erskine* v. *Townsend*, 2 Mass., 493; *Scott* v. *McFarland*, 13 Id., 309; *Eaton* v. *Green*, 22 Pick., 526; *Nugent* v. *Riley*, 1 Metc., 117; *Murphy* v. *Calley*, 1 Allen, 107; *Bacon* v. *Brown*, 19 Conn., 29; *Flagg* v. *Mann*, 2 Sumn., 533, 534; *Wharf* v. *Howell*, 5 Binney, 499; *Colwell* v. *Woods*, 3 Watts, 188; *Kerr* v. *Gilmore*, 6 Id., 405; *Brown* v. *Nickle*, 6 Barr, 390; *Hiester* v. *Maderia*, 3 Watts & Serg., 384; *Edrington* v. *Harper*. 3 J. J. Marsh., 353; *Brown* v. *Dewey*, 1 Sandf. Ch., 56; *Turnipseed* v. *Cunningham*, 16 Ala., 501; *Dougherty* v. *McColgan*, 6 Gill & J., 275; *Cotterell* v. *Long*, 20 Ohio, 464; *Mitchell* v. *Burnham*, 44 Maine, 286; *Russell* v. *Southard*, 12 How. S. C., 138.

This is sound principle as well as authority. At strict common law, the distinction between a mortgage and a conditional sale, did not exist. If the money was not paid at the day, the right to have the land back was gone. The right to redeem is purely the creature of equity, and

is an instance of the relief it affords against penalties and forfeitures. The grounds for such relief in the case of a conveyance intended as a security only, exist equally, whether there be or be not a collateral personal security. *Hickman* v. *Cantrell*, 9 Yerg., 180.

V. Courts of equity lean strongly against conditional sales, because by being used to disguise irredeemable mortgages, they are often made the instruments of oppression and extortion, and because a mistake in holding a transaction to be a mortgage is much less injurious than a mistake in holding it a conditional sale.

Hence, when a conveyance is attended by a contemporaneous agreement to reconvey on payment of a sum of money, there is a strong presumption that it is a security only, and the *onus probandi* lies on the party claiming it to be a conditional sale. In all doubtful cases it will be held a mortgage. *Marshall* v. *Stewart*, 17 Ohio, 356; *Bright* v. *Wagle*, 3 Dana, 252; *Page* v. *Foster*, 7 N. H., 394; *Brown* v. *Dewey*, 1 Sandf. Ch., 17, 64; *Trucks* v. *Lindsey*, *supra*; *Rice* v. *Rice*, 4 Pick., 32; *Nugent* v. *Riley*, 1 Metc., 117; 2 Story's Eq. Juris., § 1019; *Russell* v. *Southard*, 12 How. S. C. R., 139, 151; *Conway* v. *Alexander*, 7 Cranch, 218; *Flagg* v. *Mann*, 2 Sumn., 534, 535; *Cotterell* v. *Long*, 20 Ohio, 464, 473; *Kelleran* v. *Brown*, 4 Mass., 443; *Murphy* v. *Calley*, 1 Allen, 107; *Eaton* v. *Green*, 22 Pick., 526; *Skinner* v. *Miller*, 5 Litt., 84; *Secrest* v. *Turner*, 2 J. J. Marsh., 471; *Edrington* v. *Harper*, 3 Id., 353; *Turnipseed* v. *Cunningham*, 16 Ala., 501; *Locke's Executor* v. *Palmer*, 26 Id., 312; *Crews* v. *Threadgill*, 35 Id., 334; *Brant* v. *Robertson*, 16 Mo., 129; *Crane* v. *Bonnell*, 1 Green Ch., 264; *Hinson* v. *Partee*, 11 Humph., 587, 591; *Davis* v. *Stonestreet*, 4 Ind., 101; *Clark* v. *Henry*, 2 Cow., 324; *Dougherty* v. *McColgan* 6 Gill, and J., 275; *Batty* v. *Snook*, 5 Mich., 231.

And the Supreme Court of Pennsylvania has gone the

length of holding, in a series of cases, that a conveyance with a contemporaneous agreement to reconvey on payment of money (whether contained in the conveyance or in a distinct instrument), is *necessarily* a mortgage, and *cannot be shown by extrinsic evidence not to have been so intended. Colwell* v. *Woods,* 3 Watts, 188; *Kerr* v. *Gilmore,* 6 Id., 405; *Brown* v. *Nickle,* 6 Barr, 390; *Wilson* v. *Shoenberger,* 31 Penn., 295; *Reitenbaugh* v. *Ludwick,* Id., 131.

VI. Two facts are regarded by courts of equity as very strong evidence in such cases, that a security was intended, viz.: 1st, the previous existence of the relation of debtor and creditor between the parties; 2d, that the consideration for the conveyance was much less than the value of the property. *Conway,* v. *Alexander,* 7 Cranch, 218; *Russell* v. *Southard,* 12 How., 139; *Locke's Ex'r* v. *Palmer,* 26 Ala., 312; *Hinson* v. *Patee,* 11 Humph., 587, 591; *Bentley* v. *Phelps,* 2 Wood. & Min., 433, 443; *Davis* v. *Stonestreet,* 4 Ind., 101; *Skinner* v. *Miller,* 5 Litt., 84; *Dabney* v. *Green,* 4 Hen. & Munf., 101, 110; *Bright* v. *Wagle,* 3 Dana, 252, 253; *Turnipseed* v. *Cunningham,* 16 Ala., 501, 506; *Crews* v. *Threadgill,* 35 Id., 334, 344.

*Davidson & True* and *H. R. & E. C. Claussen* for the appellees, filed a printed argument, which has been mislaid from the files. *H. R. Claussen* commenced an oral argument, but was stopped by the Chief Justice, who remarked that the principal issues were upon the evidence, and that the court was inclined to the view of appellees' counsel.

WRIGHT, Ch. J. — We do not find, from the testimony, that Claussen had any fraudulent purpose in giving the trust deed in the place of the mortgage, pending the negotiation for the sale of the property to plaintiffs. The deed which they accepted expressly refers to the incumbrance as a " deed of trust," and they thus had the most reliable evidence and notice of its nature and import. Not only

so, but Sheaff was no party to this negotiation, nor had he any knowledge of the alleged fraud, and would not, therefore, of course, be affected by it.

The charge of fraud in procuring the conveyance of August 12, 1858, is not sustained by the evidence, and indeed it does not seem to be urged with much apparent confidence by counsel. The important inquiry is to ascertain the true and actual nature of the transaction. Plaintiffs claim that the intention (of defendants, at least, in which they were compelled to acquiesce) was to create a security which should become irredeemable by mere lapse of time, and which equity will not permit. Or if not this, then they claim that the deed was but a conveyance of the equity of redemption by themselves as mortgagors to defendant as mortgagee ; that while equity does not pronounce such a conveyance necessarily void, it looks upon it with great suspicion, and if found to have been obtained without valuable consideration, or by taking advantage of the necessities of the mortgagor's situation, should be set aside. Defendant, on the other hand, claims that there was a conditional sale to him, with the privilege in plaintiffs to repurchase. And plaintiffs concede (admitting the validity or fairness of the transaction) that as they did not exercise the right to repurchase within the time limited, they have no claim for relief. But if their view of the transaction is sustained, then they insist that nothing but foreclosure or release by plaintiffs could deprive them of their equitable right to redeem, and that as defendant put the property beyond their reach, by the sale to Carpenter, he must account to them for its value.

The most casual reading of the many decisions upon the questions involved in the claims above stated, will satisfy any one of the truth of the remark of Ch. J. ROBERTSON in *Edgington* v. *Harper*, 3 J. J. Marsh, 354, that every case must be determined by a

1. MORT-GAGE and conditional sale.

consideration of its own peculiar circumstances; that the intention of the parties is the only true and infallible test, such intention to be collected from the condition or con-. duct of the parties, as well as from the face of the written contract. There is much of good reason in the proposition, that in all doubtful cases the law will construe

**2. — presumptions in favor of mortgage.** the contract to be a mortgage rather than a conditional sale, for this construction is most apt to attain the ends of justice and prevent fraud and. oppression., *Skinner* v. *Miller*, 5 Litt., 86; *Poindexter* v. *McCannon*, 1 Dev. Eq., 373; *Connoy's Ex'r.* v. *Alexander*, 7 Cranch, 218.ᵃ And yet a conditional sale or an agreement for a repur- chase, if clearly and satisfactorily proved, although narrowly watched, will be held valid. 1 Powell Mortg., 138.; *Goodman* v. *Grieson*, 2 Ball & Beatt., 278; *Pennington* v. *Hanby*, 4 Murf., 140; *Bloodford* v. *Zigly*, 2 Caines' Cas., 124; 4 Kent, 144; *Davis* v. *Thomas*, 1 Russ. & M., 506. So that finally we have in all these cases to come back to the inquiry, whether the transaction is really a security for the repayment of money or an actual sale. For, though, in the language of the court in *Ross* v. *Minshell*, 1 Wash., 19, a deed, however absolute upon its face, and though the defeasance be by parol, will be deemed a mortgage if really intended to secure a debt. Yet the line of distinction between mortgages and defeasable sales cannot well be. marked out by any general rule, and every case must, in a great measure, be determined on its own circumstances, looking at the true nature of the transaction and the intention of the parties. *Chapman, Admr.*, v. *Turner*, 1 Call, 280; *Davis* v. *Stonestreet*, 4 Ind., 101.

And hence the court must take into consideration the price, the circumstances, all the antecedent facts, the situa-

**3. — when debt continues.** tion of the parties, and from these determine the true nature of the transaction. These differ, as we. know, as the names of the parties differ, and they so influ-

ence the determination in each case, that it is next to impossible to deduce from them any general, safe and comprehensive rule. Now, if the relation of creditor and debtor in any given case continues, and the debt still subsists, we can readily see that the relation of mortgagee and mortgagor still remains. If, however, the debt is extinguished

4. —— when extinguished.

by a fair agreement, and the grantor has the privilege merely of refunding if he pleases, by a given time, and thereby entitle himself to a reconveyance, there is a conditional sale and the equity of redemption does not continue; for a mortgage without a debt, or a debtor without a debt cannot exist. The contract being fairly made, a court of equity will not relieve the grantor who neglects to perform the condition on which the privilege of repurchasing depended. For while the policy of the law prohibits the conversion of a real mortgage into a sale, it does not prohibit the making of conditional sales. If it did, then in the language of Ch. J. MARSHALL, a court of chancery would become in a considerable degree, the guardian of adults as of infants. 7 Cranch, *supra*.

Having said this much as to some of the rules governing these cases, let us turn very briefly to the facts as shown by this record.

And, first, we understand, as before stated, that the conveyance from plaintiffs was fairly obtained. The price paid was not so inadequate as to justify the conclusion that the parties intended a mortgage, or that the conveyance was made for further security. Indeed, taking the testimony all together, it may well be doubted whether, at the time, the property was worth in cash anything more than the defendant's debt. It is true witnesses differ, as they are very apt to in such cases; but the fact that plaintiffs did not make a sale for more, after the advertisement of the property and before the conveyance, and the further fact that they were unable to raise the money by a sale, or

otherwise to obtain a reconveyance before the 1st of January, 1859, tend strongly to satisfy us that the price paid was reasonably adequate, and that there is nothing thus far to lead to the conclusion that defendant obtained an unfair or unconscionable advantage.

Then, again, we understand that the debt was extinguished, and that plaintiffs were at liberty to pay, or not to pay, at the time named. At the time of the conveyance, plaintiff's right of redemption had but little if any value. The sale by the trustee was to take place on the next day. If made, the right to redeem was entirely extinguished; and the act of defendant in giving plaintiff a right to a reconveyance at a time limited, was a favor and benefit extended, rather than a change in the form of a security. By the sale by the trustee, defendant could have secured an unquestionable title to the land, as against plaintiffs, or his money, and there was no apparent necessity on his part, for his own protection, to make the new arrangement.

In addition to this, the written instruments themselves gives the transaction this character. And though it is competent for plaintiffs to show, by parol, that a mortgage was intended, the proof should be satisfactory, and much more so than is here presented. When, as we have seen, upon the whole facts it is doubtful what the parties intended, equity is inclined to treat their transaction as a mortgage. But if the writing or agreement is not doubtful, and the party seeks to show *aliunde*, that there was a parol defeasance, the burden of proof is upon him, and he must satisfy the court by sufficient proof of the equity of his claim.

And finally, plaintiffs' conduct subsequently is in conflict with their present claim. They surrendered the property at the time fixed for the repurchase, or the refunding of the money. One of them took a new lease, and in March, 1859, made a final surrender. Defendant

sold in the fall of that year, and this action was not commenced until nearly a year afterwards. These acts indicate the understanding they had at the time of their rights and the true nature of the transaction. They are more probably in accord with the true and actual intention of the parties than the subsequent claim made after the sale to Carpenter, and when they found that there was a possible margin for realizing something beyond the original debt with interest.

Thus we view the facts. Their statement in detail is unnecessary. There are some circumstances, we readily admit, favoring, no little, plaintiffs' theory of the transaction. Giving them their full weight, however, we conclude that the parties intended a conditional sale, and that the bill was therefore properly dismissed.

Affirmed.