## CARUTHERS' Administrator v. HUNT.

*Appeal from Muscatine District Court — Monday, June* 12.

EQUITY: ABSOLUTE DEED, WHEN TREATED IN EQUITY AS A MORTGAGE: MENTAL UNSOUNDNESS AS AFFECTING CONTRACTS: *Trucks* v. *Lindsay, ante; Vennum* v. *Babcock,* 13 Iowa, 194, and *Corbit* v. *Smith,* 7 Id., 60, CITED AND APPROVED.

I. *As to the land transaction.* — On the 22d day of August, 1860, Archless Caruthers (by whom the petition in this cause was filed June 25th, 1862, but who deceased October 27th, 1862; L. H. Washburn, administrator, being afterwards substituted as plaintiff), borrowed of the defendant Hunt the sum of $1,000, at the same time delivering to him two black mares, worth, according to the testimony, from $150 to $200. On the same° day (Aug. 22, 1860), Caruthers made to the defendant an *absolute deed* for his farm and adjacent land, thereby conveying to the defendant nominally 480 acres of land. Upon the whole evidence it is not clear that this deed really conveyed title to more than about 400 acres. The consideration for this conveyance, as expressed in the deed, was $5,000.

Contemporaneously with the receipt of this deed, and as a part of the same transaction, the defendant executed and delivered to Caruthers a title bond, conditioned to reconvey to him the land upon the payment of $1,050 on the 20th day of August, 1861. This bond concluded thus: "Now, if Caruthers shall not pay the sum as above set forth, then the said George W. Hunt reserves the right to ratify or confirm the said sale or not."

In relation to the value of the land thus conveyed to the defendant, the testimony is somewhat variant.

Rotshaw, who makes one of the lowest estimates, places its value, taking the lowest number of acres and the lowest price, 400 acres at $7, $2,800; or, if 480 acres at $8, his highest estimate, it would be

$3,840. The highest estimate of another witness is $3,880, and his lowest estimate is $3,480.

Dr. Rowe and Dr. Van Pelt make the land worth $6,000. Mr. Pumigton estimates the land at $12 per acre, or, in all, $4,800. Thomas places it at about $6,000. A nephew of the defendant places the value of the land as low as $1,680.

Upon the evidence, it would be a moderate estimate to place the value of the land at from $3,000 to $3,600.

There is evidence showing that in the fall of 1861, and particularly in the spring of 1862, Caruthers, in the presence of witnesses, gave up the farm to the defendant; said he would surrender and cancel the title bond, which, however, was never done, and the defendant took possession and put a tenant upon it; but this was without the consent of the plaintiff's wife, who, in about a week, returned and drove the tenant from the premises.

Caruthers, about this time, admitted to several witnesses that Hunt owned the farm and all that was upon it.

To this the reply of Caruthers is, that he was, at the time of the alleged agreement to surrender the farm and cancel the title bond, non compos mentis.

About the time of these admissions Caruthers was in debt; was having a difficulty with his wife, contemplating at times a divorce and at other times leaving the country.

The result of the testimony in relation to his alleged mental incapacity is given in the opinion.

II. *As to the chattel mortgage transaction.* — On the 14th day of October, 1861, Caruthers made his note to the defendant for $1,500, and secured the same by a chattel mortgage upon sixteen or seventeen horses (sixteen are named but seventeen are enumerated in the instrument) and one hundred hogs.

Caruthers claims in relation thereto:

1st. That he was insane or of unsound mind when this was made, and that he never received value therefor.

2d. That, if valid, the defendant has been fully paid by the value of the horses, which he took by virtue thereof and otherwise.

The cause was referred to Hon. WM. G. WOODWARD, as referee, who took the testimony and reported in substance:

1st. That he found against the insanity of Caruthers at the date of the transaction in suit.

2d. That the deed of the land of August 22, 1860, from Caruthers to Hunt is, in equity, a mortgage, and its character as such has never been changed.

3d. He states the account between the parties (giving, in his report, his reasons for each allowance and for the disallowance of certain items), thus: Hunt is entitled to the following credits:

| | | |
|---|---:|---:|
| Loan Aug. 22, 1860, | $1,000 | 00 |
| Interest at 5 per cent to date of report, | 208 | 33 |
| Sum in chattel mortgages, | 1,500 | 00 |
| Interest at 10 per cent, the specified rate on same, | 375 | 51 |
| Amount of taxes paid by Hunt on land, | 281 | 32 |
| Interest on ditto, $43.47; sundries, $61.50, | 104 | 97 |
| | $3,475 | 13 |

Caruthers is entitled to the following credit on the above:

| | | |
|---|---:|---:|
| The value of the two mares delivered Hunt, Aug. 22, '60, | $150 | 00 |
| Interest on ditto, | 62 | 50 |
| One hundred hogs, | 450 | 00 |
| Interest on ditto, | 135 | 00 |
| Seventeen horses, | 1,275 | 00 |
| Interest on ditto, | 382 | 50 |
| | $2,455 | 00 |

Leaving Caruthers indebted to Hunt in the sum of $1,020.13, for which he was entitled to hold the land as security.

A decree was entered accordingly.

Hunt appeals.

*D. W. Richman* and *Carskaddon* for the appellant—*D. C. Cloud* for the plaintiff.

DILLON, J.—I. So far as the cause turns upon its *facts*, we do not propose to set out in detail the reasons for our judgment, but announce the conclusion, simply, to which we have been brought. Counsel must be content with this, and with the assurance that the record and all of the testimony has been carefully examined in concert. Where a cause depends solely upon the question in whose favor is the weight of evidence, or where, in the balancing and estimate of probabilities, is the truth most likely to be found, it is of no value, or almost none, as a precedent, and it is better generally, perhaps always, unless the case is one involving an unusual amount of property, to state the result without incumbering the opinion, and consequently the reports, with a statement of the mental processes by which the result has been attained. So far as causes involve and turn upon questions of *law*, the judgment of the court is a precedent, and if the question is a new one, or one which has never before been determined in the State an exposition of the grounds and reasons of the

decision is justly expected by the court. We bear these observations in mind, in the disposition of the present appeal.

Obviously the first inquiry which presents itself relates to the land transaction of August 22, 1860, in which Caruthers conveyed to Hunt the land by deed absolute,. and received back a title bond as before stated; and the question is, was it a *deed* or *mortgage?* That it was in equity a mortgage can admit of no reasonable doubt. To regard it as a sale compels us to find that Caruthers sold a pair of mares worth nearly or quite $200, and 400 to 480 acres of land worth from $3,000 to $4,000 for $1,000. Again, the amount of the consideration in the deed, $5,000, militates against the theory that an absolute sale was intended. And again, the contemporaneous execution of a title bond back, removes the question from all doubt, and stamps the transaction as a mortgage. *Trucks* v. *Lindsay, ante.* Indeed the defendant's counsel, in their printed argument, admit, as in candor they could not well refuse to do, that "legally, the deed and bond at first constituted a *mortgage* transaction, but the subsequent modification and agreement made the transaction absolute."

It is not, perhaps, as clearly established as it ought to be, that there was a subsequent concluded and final abandonment by Caruthers of his right in the land, and to have the same upon paying Hunt his debt.

If Caruthers was of sound mind, and fairly made such an agreement, the principles laid down in *Vennum* v. *Babcock,* 13 Iowa, 194, would apply. Certain it is that Caruthers never surrendered his title bond.

But assuming that, in the fall of 1861 or in the spring of 1862, Caruthers did say to the defendant, "I give up all, take possession," &c., we are all of the opinion, upon the testimony of Dr. Rowe, Dr. Van Pelt, Mr. McMenomy and others, that, if not insane, his mind had, nevertheless, been so unsettled and impaired by the combined influence and operation of disease, excessive and long continued use of intoxicating liquors, and domestic difficulties, as to render him almost or quite an imbecile; so much so as to require courts of equity to protect him from the consequences of contracts so obviously and highly prejudicial as the one which is insisted upon by the defendant.

The main legal principles applicable to this subject are well stated by WRIGHT, Ch. J., in *Corbit* v. *Smith,* 7 Iowa, 60, 64, *et seq.,* from which, however, the case at bar is distinguishable in its facts. See also Story Eq. Juris., §§ 227, 228, 234, 235, 236, 237, 238. Within the just and enlightened principles there laid down, the plaintiff's case has clearly been brought. There is no difficulty in placing the par-

ties in *statu quo*, if this be an indispensable condition to the granting of relief. We are of the opinion, then, the deed of August 22, 1860, was in equity a mortgage; and that its character as such has never been changed by any subsequent valid agreement.

II. This brings us to the next question, and that is, the state of the account between the parties. We allow six per cent interest instead of five per cent, from the 20th August, 1861. We merely observe that the evidence does not satisfy us that the referee over-estimated the value of the horses, or that the defendant made a fair sale of all of them, so that he should only account on the basis of the amount received. The referee made a nominal error in charging the defendant for the hogs mentioned in the chattel mortgage, instead of those testified to by Overman; but the error was nominal only, as the hogs shipped to Chicago were worth that amount, and the defendant's answer is no evidence in his favor that he accounted for the proceeds.

The referee rejected the plaintiff's charge for wheat delivered to the defendant, although the amount and delivery were sworn to by Thomas; also, certain items of about an equal amount claimed by defendant. The result is substantially right, and the decree below, with the above modification as to interest, is affirmed.

We also think that Hunt is entitled to the balance due on the Gordon claim of $141.25.

There is no proof that he agreed absolutely to take the property turned out as his own, and assume the debt. He simply took it "toward paying" or "on account" of the Gordon debt. But for this amount he is not entitled to any other lien than the one which the judgment gives him.

Costs in this court to be equally divided.

Decree modified and affirmed.