EDWARD S. BIGLER, Appellant, v. JOHN T. JACK, Appellee.

**Deed as Mortgage:** EVIDENCE. Evidence is admissible to show that a deed of lands, absolute in form, is in fact a mortgage, though there is no showing that a defeasance has been omitted or destroyed by fraud or mistake.

INADEQUACY OF PRICE. Land was deeded to a party, under an agreement for the privilege of repurchasing, at the same amount per

114  667
f131  115
131  431

114  667
f132  364
132  365
133  244

114  667
137   54
137  695

114  667
142  512
142  513

114  667
144  218

acre as it had been offered to a third party, and the evidence showed that it was not worth more than $3 per acre over that paid. *Held*, that there was inadequacy of price sufficient to indicate that such deed was meant to be a mortgage.

*Sufficiency of evidence.* Plaintiff, who was indebted to defendant and another, deeded his land for about the amount of its value to defendant, who agreed to reconvey on payment of a certain sum, and provided plaintiff would take a lease of the land at a customary rental. Plaintiff so leased the land, and the debts of the third party and defendant were canceled. At the same time plaintiff borrowed another sum of money from defendant, giving a chattel mortgage as security. *Held*, that the evidence failed to show that the deed constituted an equitable mortgage.

Conditional sale. Parties may make a purchase and sale of lands with the reservation to the vendor of right to repurchase the same within a given time at an agreed price, which, in conformity with the intention of the parties will be treated as a conditional sale, and not a mortgage to which the right of redemption attaches.

Same: *Forfeiture of right to reconveyance.* Code, section 4297, provides that where the vendor of real estate has given a bond or other instrument to convey the same on payment of the purchase money, and part thereof remains unpaid after time for payment, whether time is or is not of the essence of the contract, the vendor may proceed to foreclose and sell his interest in the property. Section 4298 declares that the vendee shall in such case be treated as a mortgagor, for the purpose of foreclosure, and that his rights may be foreclosed in a similar manner. *Held*, that, though an agreement to reconvey to a vendor within a given time at an agreed price is a mortgage, yet, as time is the essence of the contract, on failure to pay the purchase price within such time the right to a reconveyance is forfeited.

Redemption: *Forfeiture in equity of interest on account of usury.* Where a borrower seeks to redeem a mortgage securing a usurious loan without tendering or paying any interest, equity will enforce redemption, though in so doing it enforces a forfeiture of the interest for exacting usury.

*Same.* Though a lease recites that a certain sum is to be paid as rent, equity will declare the same to be interest for the use of certain money, if that is the intention of the parties.

*Appeal from Shelby District Court.*—Hon. A. B. Thornell, Judge.

WEDNESDAY, OCTOBER 16, 1901.

SUIT in equity to have a deed and contract for recon-
veyance declared a mortgage, for an accounting, and to re-
deem. The trial court denied the relief asked, and plaintiff
appeals.—*Affirmed*.

*Byers & Lockwood* for appellant.

*Thos. H. Smith* and *Harl & McCabe* for appellee.

DEEMER, J.—Plaintiff was the owner of the land in
controversy, subject to a mortgage of $3,000 to one Ficke,
of Davenport, Iowa, and another of about $2,000 to defend-
ant, Jack. Jack's mortgage was long past due, and he
(Jack) was insisting on payment of part or all there-
of. Bigler was unable to pay, but he came to Har-
lan, where Jack resided, and offered to sell his land,
consisting of 200 acres, to a third party for $25 per acre.
Failing in this, he went to Jack and offered to sell to him
for $30. This Jack refused to pay, and, after some further
talk, Bigler finally said to Jack that he would sell him the
land for $25 per acre provided he (Jack) would give him a
contract to repurchase or redeem the land in four or five
years if he (Bigler) could raise the money. To this Jack
replied that he would do so if he (Bigler) would rent the
farm of him at customary rental, which was agreed between
them to be $3 per acre per year. To this Bigler assented.
The amount of the incumbrance then existing against the
land, including taxes and a bonus that Jack was compelled
to pay Ficke to secure the first mortgage, was approximately
$5,000. Pursuant to the agreement, Bigler and wife made
an absolute conveyance of the land by deed of general war-
ranty to Jack, the expressed consideration being $5,000. At
the same time, and as part of the same transaction, Jack
executed a contract to reconvey, the material part of which
is as follows, to wit: "The first party [Jack] agrees to sell

and convey to the second party [Bigler], upon conditions hereinafter named, the following described premises. * * * The second party agrees to pay as full purchase price the sum of $5,000.00 on the first day of January, 1895. Possession of the said premises has this day been given second party by virtue of a lease for the term of four years this day executed, to take effect March 1st, 1891, * * * which is made a part of this contract. * * * And it is expressly stipulated that in case said second party shall fail to carry out, all and singular, the terms of this contract and said lease, and shall fail to make the payments of the rent at the time set out in said lease, and strictly and literally perform, all and singular, the terms of said lease, time of payment being hereby made the essence of this contract, the contract shall be at an end without notice or declaration of forfeiture, and the first party may recover possession of said premises under and by virtue of his lease, or otherwise under this contract, as he shall see fit; and, in the case of the forfeiture of said lease, then this contract shall be at an end." Signed February 28, 1891. The lease to which reference is made was executed at the same time as the other papers, and is in the ordinary form of farm leases. It was for the term of four years, at the yearly rental of $600, which rental was represented by notes signed by Bigler, maturing January 1, 1892, and on the first day of each succeeding January until the end of the term. By agreement of the parties the contract of sale and the lease were extended for the term of two years, but, as part of the agreement for extension, Bigler agreed to pay the taxes. About the time the lease as so extended expired, plantiff commenced this suit to have the whole transaction declared a mortgage, for an accounting, etc. The accounting feature of the case was referred to a referee, who reported that there was usury in the transaction, and that if the deed was held to be a mortgage, and plaintiff was allowed to recover, he should be charged with the sum of $1,089.09, the amount

found due after purging the usury in the various notes made
by Bigler to Jack. In support of his contention, plaintiff
claims that the transaction, on its face, constitutes a mort-
gage; that Jack never entered into the possession of the
premises; that he never made any repairs or put any im-
provements on the same; that, although he knew Bigler
was still claiming to be the beneficial owner of the land and
was endeavoring to sell it, he never made any objection
thereto, nor insisted that he was the owner, but, on the con-
trary, counseled with him regarding sales and exchanges of
the land; that at the time of the transactions in question the
land was worth more than $30 per acre; and that he did not
intend an absolute sale to Jack. On the other hand, defend-
ant insists that the transaction was a sale, with an agree-
ment to reconvey; that all prior debts were canceled at the
time the deed was made; and that thereafter there was no
debt to secure, but merely an option in Bigler to repurchase
if he saw fit to do so; that Bigler did not understand he was
under any further obligations to him (Jack) after the deed
was made, except to pay the rent for the farm, and that, on
the whole evidence, the case should be treated as one of con-
ditional sale, rather than a mortgage; and that the decree of
the trial court was and is correct. Stripped of all its re-
finements, the case presented but the single proposition,
should the deed be treated as a mortgage, with an equity of
redemption in the grantor, or be treated as an absolute
deed, with a contract of resale on the part of the grantee?
If the latter, the case was properly decided by the trial
court. If the former, it should be reversed.

At the outset we may well dispose of some of the con-
tentions made by the respective parties.

Defendant insists that a deed cannot be shown to be a
mortgage in the absence of proof that a defeasance has been
omitted or destroyed by fraud or mistake. That some of
the cases so hold is undisputed, but we cannot agree
to the proposition as thus stated. The reason why
parol evidence is admissible, notwithstanding the

statute of frauds, to show that an absolute deed is in reality, as between the parties, a mortgage, is that a court of equity will not construe a statute designed to prevent fraud in such a manner as to produce fraud. For a grantee to insist on a conveyance as absolute, when it was given and accepted only as security, would be a palpable fraud; and, if the general statement of the rule made by defendant's counsel be correct, this fraud will be held to relate back to the inception of the instrument. No allegations of fraud or mistake are necessary, however; for, as we have said, when a grantee insists that an instrument given and accepted only as security is absolute, the fraud is established, and equity takes jurisdiction. This whole matter is made clear in 3 Pomeroy Equity Jurisprudence (2d Ed.) section 1196, and cases cited; *Roberts v. McMahan,* 4 G. Greene, 34; *Peugh v. Davis,* 96 U. S. 332 (24 L. Ed. 775). For a learned discussion of the subject, see *Campbell v. Dearborn,* 109 Mass. 130 (12 Am. Rep. 671). No matter, then, what the foundation of the rule, it is now established by the great weight of authority that a deed absolute on its face may be shown to be a mortgage, although there be no fraud or mistake in omitting the defeasance clause.

Again it is contended on the part of defendant that, as forfeiture of interest for usury is in the nature of a penalty, a court of equity will not lend its aid to a borrower to enforce this penalty in a suit brought by him to redeem. There is much to be said in favor of this position, but it has not commended itself to this court. We have heretofore established a different rule in several cases. *Morrison v. Miller,* 46 Iowa, 84; *Johnson v. Smith,* 39 Iowa, 549. See, also, *White v. Lucas,* 46 Iowa, 319; *Allen v. Fogg,* 66 Iowa, 229. The writer would be glad to see a rule established which would require a plaintiff in such cases to pay or tender the amount received by him, with legal interest.

Plaintiff relies on inadequacy of price as one of the *indicia* of a mortgage. If such inadequacy appeared, it

would, no doubt, be strong evidence in support of his contention; but it is not apparent in this case. The land was not worth to exceed $28 per acre at the time of the transaction, and just before negotiating with Jack the plaintiff offered to sell it for $25 to a third party.

He also contends that the rent reserved in the lease was simply interest for the use of money, and that the court should look beyond the form of the transaction, and so hold. Courts of equity will, of course, look beyond mere forms, and ascertain, if they can, the real transaction. If the rental was intended as interest, equity will so declare; but, if the parties intended it as rent, courts have no right to say it was something else. In this case both parties say it was rent that was agreed to be paid for the use of the land, at customary prices. Of course, if they intended it as interest for the use of money, courts will give effect to their intention, although a formal lease has been given, and it is called "rent." *Rogers v. Davis*, 91 Iowa, 730; *Conlee v. Heying*, 94 Iowa, 734. Plaintiff did not apply to defendant for a loan, and the evidences of indebtedness existing prior to the conveyance were canceled after the deed was made.

Plaintiff also contends that when a deed absolute on its face is accompanied with an agreement to reconvey on the payment of a certain sum of money, or on the performance of some other condition, it is conclusively presumed that the two instruments constitute a mortgage. It is true that Mr. Jones, in his work on Mortgages, says: "At law an absolute deed and separate defeasance or agreement to reconvey, executed at the same time, amount to a mortgage." See 1 Jones, Mortgages (3d Ed.) section 244. He also says: "When it is once established that the separate instrument is a defeasance, the conveyance assumes the character of a mortgage, with the inseparable incident of redemption, which no agreement of the parties that the estate shall be

absolute if the money be not paid at the day fixed can waive." Section 250. In view of this learned author's treatment of the subject in section 256 *et seq.*, it is a little difficult to understand these broad statements, unless it be on the theory that he distinguishes between law and equity; for in section 260, after quoting from Chief Justice Marshall's decision in *Conway's Ex'rs v. Alexander,* 7 Cranch, 218 (3 L. Ed. 321), he says: "In order to convert what appears to be a conditional sale into a mortgage, the evidence should be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage. It may well be that a person buys lands in satisfaction of a pre-existing debt, * * * and at the same time contracts to reconvey the lands upon the payment of a certain sum, and there is no intention on the part of either party that the transaction should be in effect a mortgage. The covenant to reconvey is not necessarily, either at law or in equity, a defeasance. * * * Something more is necessary, and an indisputable thing is a debt by the grantor to the grantee, for which the conveyance is security." In section 261 he further says: "* * * The agreement may on its face be either an agreement to reconvey, merely, or may amount, with the deed, to a mortgage, in which case resort to evidence outside of these instruments may be necessary to determine the character of the transaction." Perhaps the author, in writing these apparently conflicting statements, had in mind the distinction between a strict contract of defeasance, which renders the instrument void, and an agreement to reconvey. But we will not further speculate on this subject. The case cited from this state to sustain the rule first announced does not go to the extent claimed. That case (*Caruthers' Adm'r v. Hunt,* 18 Iowa, 576) refers to *Trucks v. Lindsey,* 18 Iowa, 504, wherein this rule was established: "This rule of equity which attaches the right of redemption to every grant made as security does not in the least interfere with the right or power of persons to

make a conditional sale. It is, therefore, competent for parties to make a purchase and sale of lands with a reservation to the vendor of the right to repurchase the same land within a given time at an agreed price. A resort, however, to a formal conditional sale as a device to defeat the equity of redemption, will, of course, when shown, be unavailing for that purpose; and the possibility of such resort, together with other considerations, has driven courts of equity to adopt as a rule that, when it is doubtful whether the transaction is a conditional sale or a mortgage, it will be held to be the latter." Surely parties have the right to make valid contracts of sale, with agreements to reconvey on certain specified conditions, that will not be treated as mortgages. Courts do not undertake to make contracts. They simply interpret and enforce those already made. As said by Pomeroy in his Equity Jurisprudence (volume 3 [2d ed.] section 1194): "* * * The two, taken together, may be what on their face they purport to be,—a mere sale, with a contract of repurchase,—or they may constitute a mortgage. In the first case, where the transaction is merely a sale and a contract of repurchase, the agreement must be fulfilled according to its terms. If the grantor fails to pay the money at the stipulated time, all his rights, either at law or in equity, under the contract are gone; there is no equity of redemption." Quoting still further from Pomeroy (section 1195): "Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own circumstances; for the question finally turns, in all cases, upon the real intention of the parties, as shown upon the face of the writings, or as disclosed by extrinsic evidence." These seem to be the rules sustained by the great weight of authority. Our own cases are in harmony with them. *Bridges v. Linder,* 60 Iowa, 190; *Chandler v. Chandler,* 76 Iowa, 574; *Iowa State Sav. Bank v. Coonrod,* 97 Iowa, 106; *Conlee v. Heying,* 94 Iowa, 734; *Scott v. McWhirter,* 49 Iowa, 487; and *Hughes v. Sheaff,*

19 Iowa, 343, which is one of the leading cases in this country. As said in *Baird v. Reininghaus*, 87 Iowa, 167. "If it appears that the debt was extinguished, and the grantor is invested with the right to purchase by a given time and on payment of a certain sum, then the transaction would be a conditional sale;" citing *Trucks v. Lindsey*, 18 Iowa, 504, and *Hughes v. Sheaff*, 19 Iowa, 343. That there are cases to the contrary is conceded, but, as said by Wright, J., 'in the *Hughes Case, supra*: "The contract being fairly made, a court of equity will not relieve the grantor who neglects to perform the condition on which the privilege of repurchasing depends. For, while the policy of the law prohibits the conversion of a real mortgage into a sale, it does not prohibit the making of conditional sales. If it did, then, in the language of Chief Justice Marshall, a court of chancery would become in a considerable degree the guardian of adults as well as infants." In *Montgomery v. Chadwick*, 7 Iowa, 114, relied on by appellant, the bond to reconvey recited a loan of money, and stated that the deed was made as security. *Rosierz v. Van Dam*, 16 Iowa, 175, does not decide the point in controversy in this case; and, if it did, there was there a contract of defeasance, rather than of sale. *Caruthers' Adm'r v. Hunt*, 18 Iowa, 576, was made to turn on the facts, and not on the execution of the title bond back alone. In *Brush v. Peterson*, 54 Iowa, 243, the court expressly found that the deed was executed as security for a note which was made contemporaneously with the deed, and there was an agreement to reconvey on payment of the note and taxes on the land, etc. Indeed, none of our cases are in conflict with the rule we have attempted to announce. On the contrary, *Bridges v. Linder*, 60 Iowa, 190, is directly in accord with it. But plaintiff insists that the agreement to reconvey is in itself a mortgage, under sections 4297 and 4298 of the Code. Let that be conceded, yet it does not follow that he has a right to redeem. Time was made the essence of the contract in this case, and, on failure to pay as

agreed, plaintiff's rights were forfeited. *Schmidt v. Williams,* 72 Iowa, 317.

With these rules etablished, let us now turn again to the facts. Plaintiff was not seeking to make a new loan, and he did not come to defendant as a borrower. He approached defendant for the purpose of selling, and a price was finally agreed upon, provided plaintiff was given the right to repurchase. The written instruments all indicate a sale, with an agreement to reconvey. Plaintiff leased the premises from defendant, and the rental was fixed not at what would be the interest rate, but at the customary value. At the same time plaintiff borrowed of defendant a small amount of money ($250), and gave a chattel mortgage on his personal property. There was no necessity for disguising the transaction. The land was worth but little, if anything, more than the agreed price. The Ficke debt was canceled, and the notes and mortgages held by Jack were surrendered, as we understand it. Indeed, plaintiff says that when he gave defendant the deed he (defendant) agreed to cancel the Ficke notes and his own notes and mortgages, and release him (plaintiff) from those debts. He further said that he understood it was optional with him to repurchase the land; that, unless he bought it back, the title was to remain in defendant. The only indebtedness that the plaintiff was under after the making of the deed, if any, was his agreement to repurchase for a certain sum under conditions expressed in the agreement to reconvey. The other obligations were all canceled when the deed was executed, or as soon as Jack was able to secure the Ficke mortgage. True, defendant made no improvements on the premises, but this is of no importance in view of his contract to sell at a specified price. Moreover, if a sale was not intended, there was no necessity for taking the deed. Jack could have purchased the Ficke mortgage and held it as security. His loan was secured not only by a second mortgage on the land, but by a chattel mortgage on plaintiff's personal property. With

those he was as well protected as he could possibly be under an absolute deed given as security. Furthermore, few men would make a loan of $5,000 on land worth not·to exceed $5,600, and it is hard to believe that one holding a second mortgage of $2,000, secured by a second mortgage on the land, would jeopardize $3,000 more by uniting it with his notes which were claimed to be usurious. There is no claim that the deed was made to purge the transaction of usury. Plaintiff and defendant were then on the best of terms, and neither had in mind the usurious character of the previous loans. The efforts made by plaintiff to sell the land after he deeded it to defendant are fully explained by him. He says that he had no right to do so if it injured defendant, and that he supposed defendant would allow another to take his place under the contract. Quoting again from the *Hughes Case*: "When, as we have seen, upon the whole facts it is doubtful what the parties intended, equity is inclined to treat the transaction as a mortgage. But if the writing or agreement is not doubtful, and one party seeks to show *aliunde* that there was a parol defeasance, the burden of proof is on him, and he must satisfy the court by sufficient proof of the equity of his claim." There, as here, there was an agreement for repurchase.

On the whole, the equities seem to be with defendant, and the judgment is AFFIRMED.