CATHERINE BRADFORD, Appellant, v. FRANK H. HELSELL, J. P. FARMER and others.

**Execution sale:** REDEMPTION: FORM OF ACTION. Where the court has ordered that a proceeding to redeem from execution sale and to have a conveyance absolute in form decreed to be a mortgage shall be tried in equity, and the cause is so tried without objection, it will be treated as an equitable action on appeal.

**Mortgages:** ABSOLUTE DEED AS A MORTGAGE: EVIDENCE. A deed absolute in form may be shown to be a mortgage, even though the conveyance be from a third person; but it will not be so decreed unless the evidence is so clear and satisfactory as to leave no doubt that such was the real intention of the parties.
In this action the evidence is reviewed and held to show that the deed in question was not intended as a mortgage.

*Appeal from Clay District Court.*—HON. D. F. COYLE, Judge.

FRIDAY, APRIL 7, 1911.

A PROCEEDING to redeem from an execution sale, and to have a conveyance absolute in form decreed to be a mortgage only. Judgment for the defendants. The plaintiff appeals.—*Affirmed.*

*James Deland* and *Buck & Kirkpatrick,* for appellant.

*F. H. Helsell* and *E. A. Morling,* for appellees.

SHERWIN, C. J.—This is a special proceeding under section 4057 of the Code, brought by the plaintiff to enforce her right to redeem certain land from a sale under execution. The controlling question in the case is whether a deed absolute in form is, in fact, simply a mortgage. The facts are substantially as follows:

S. C. Bradford, husband of the plaintiff, owned an equity in a farm other than the one in controversy here. He had an opportunity to trade such equity for a stock of hardware and an equity in a store building, and to trade the stock and store building for an equity in the land involved herein, which was then owned by one Anderson. To carry through this entire deal he required $2,500 in cash, and in January, 1906, he went to the defendant bank to procure such amount. Bradford at that time owed the bank over $8,000, and he proposed to secure the amount of his present indebtedness and the advance of $2,500 which he needed to consummate the land deal by giving the bank a mortgage on the land he was to acquire. An agreement was finally reached whereby the bank furnished Bradford $2,500 in cash and the trades were made. Un-

der the arrangement between Bradford and the bank, the Anderson land was conveyed by Anderson directly to J. P. Farmer for the bank by a warranty deed, subject only to two mortgages which were then on the land, one of $10,000 given to a Davenport bank and the other of $2,000 given to the National Bank at Marathon, Iowa. Bradford's total indebtedness to the bank was ascertained, and he gave his notes therefor due on demand with interest. As a part of the agreement, Bradford was to pay the interest on the two mortgages then on the land and the taxes. The land was at the time of its transfer rented for 1906, and under the agreement Bradford was to have the rent for that year. The defendant bank leased the farm for the years following 1906 and collected the rent. Bradford did not pay the interest accruing on the two mortgages, nor did he pay the taxes on the land. In February, 1908, the Bank of Marathon began an action for the foreclosure of its mortgage, making Bradford and his wife, the plaintiff herein, parties, and alleging that they claimed some right in the property. There was a decree of foreclosure in April, 1908, and a sheriff's sale thereunder followed; the certificate of sale being issued to the defendant herein, Frank H. Helsell, who was the attorney for the Marathon bank in the foreclosure proceedings. The certificate afterwards became the property of the defendant bank, and it was owned by said bank at the time this proceeding was commenced. In May, 1909, S. C. Bradford executed to his wife, the plaintiff herein, a warranty deed purporting to convey the land in question to her, and in July following she attempted to redeem from the foreclosure and sale. The clerk of the district court refused to issue a certificate of redemption, and this action resulted; the plaintiff claiming that the deed to the bank was, in effect, a mortgage given to secure S. C. Bradford's indebtedness to said bank, and that she, as the assignee of the mortgagor, has the right to redeem.

The plaintiff insists that this is a special proceeding under the section of the statute heretofore referred to, and not a general action in equity, and that she has no right

<span style="margin-left:2em">1. EXECUTION SALE: redemption: form of action.</span> herein to redeem under the agreement between the bank and her husband. The trial court ordered the issue tried as an action in equity, and it was so tried, without objection so far as we are able to determine, and we shall so treat it now. Indeed, the statute (section 4057) expressly provides that the matter presented thereunder shall be tried upon such evidence and in such manner as may be prescribed by the court.

The law governing this case is well settled, and the parties do not seriously disagree as to what it is. A deed absolute in form may be shown to be a mortgage. *Green*

<span style="margin-left:2em">2. MORTGAGES: absolute deed as a mortgage: evidence.</span> *v. Turner,* 38 Iowa, 114; *Krebs v. Lauser,* 133 Iowa, 241; *Bigler v. Jack,* 114 Iowa, 667. Such is also the rule when the conveyance is from a third party to the alleged mortgagee. *Jones v. Gillett,* 142 Iowa, 506; *Krebs v. Lauser, supra.* A deed purporting to convey absolute title will not be held to be a mortgage only, unless the evidence is so clear and satisfactory as to leave no doubt that the real intention of the parties was to execute a mortgage. *Bigler v. Jack, supra; Betts v. Betts,* 132 Iowa, 72; *Krebs v. Lauser, supra; Robertson v. Stoddard Co.,* 106 Iowa, 414. The intention of the parties at the time the instrument was executed is the controlling factor in determining its true character. *Hughes v. Sheaff,* 19 Iowa, 335; *Green v. Turner, supra.*

We now go to the facts. S. C. Bradford testified that the agreement was that the bank should take the title and hold it as security for a part of his past indebtedness to it and as security for the $2,500 which was to be advanced to him for the purpose of consummating the transaction. The notes that he gave the bank at the time were re-

tained by it and entered on its books. There are also expressions in letters written by some of the bank officers, and in their conversation relative to the matter, which may be construed as admissions that the bank was holding the title as security only. The fact of the foreclosure of the Marathon bank mortgage and the purchase of the certificate by the defendant bank is also relied upon as tending to show that the deed was in reality no more than a mortgage. On the other hand, there is the deed itself, absolute in form and purporting to convey full title. There is the positive testimony of two witnesses, who are unimpeached, that the agreement was that the bank should have full and complete title, and that, in the event the land could thereafter be sold for more than the mortgages thereon, when it was transferred to the bank, and the indebtedness of Bradford to the bank, Bradford was to have the surplus. The testimony of these witnesses is confirmed by that of a third, who is wholly disinterested, that he heard a conversation between Bradford and the bank to the effect that the bank was to have absolute title. Bradford has never since paid a cent on either of the two mortgages, nor to the defendant bank. The defendants have had the rent since that of 1906, and have paid the taxes. The greatest value of the land when it was deeded to the bank was about $22,000. It was subject to mortgages amounting to $12,000, and Bradford then owed the bank nearly $11,000. The evidence further shows that Bradford and the bank had just concluded litigation in Minnesota involving nearly $50,000, in which Bradford had tried to show that a deed was a mortgage, and that, when Bradford called upon the bank to help him in this matter, he was reminded of their trouble in Minnesota, and told that the bank would do nothing for him, nor have anything to do with the matter, unless absolute and complete title was conveyed to the bank by the then owner of the land, Mr. Anderson.

Circumstances appearing in evidence also support this claim of the defendants. The statements appearing in letters and made by the bank's officers, relied upon by the plaintiff, are not wholly inconsistent with the defendants' claim. If it was the understanding of the bank that Mr. Bradford might eventually get something more out of the land, it would not be unnatural to speak generally of the matter as a "security." But, in any event, loose and random statements should not be permitted to overcome direct and positive proof. That a deed given under such an agreement as is established here is not a mortgage is settled by our own cases. *Hughes v. Sheaff, supra; Bigler v. Jack, supra.* This case certainly presents no stronger equities in favor of the plaintiff than the conditional sale contracts discussed in the cases just cited. While there is some analogy between them, they are not exactly alike, for the reason that the only promise the bank made was to give to Bradford whatever might remain from the sale of the farm, if it should be sold, after the mortgages thereon and his indebtedness to the bank was satisfied. The evidence does not convince us that this deed was intended as a mortgage; hence the judgment of the trial court is *affirmed.*