## Alanson R. Cornell v. Joshua S. Hall.

*Mortgage or conditional sale: Intention of parties.* A court of equity will not permit a transaction which is in substance a mortgage to have the effect of a sale; nor is there any principle which prevents the making of a conditional sale, or which will allow the court to convert, by interpretation, a conditional sale into a mortgage. The only safe criterion in determining controversies arising upon such transactions is the intention of the parties, to be ascertained by considering their situation and the surrounding facts as well as their writings.

In cases of doubt the court will lean to the conclusion that a security was meant, as more likely than a sale, to subserve the ends of justice. Where the idea that a security was intended, is conveyed with reasonable distinctness by the writings, and no evil practice or mistake appears, the court will incline to regard the transaction as a security, because of the general reasons which in all cases of uncertainty favor written evidence. But if it satisfactorily appears that a conditional sale was intended, the transaction must retain the stamp which the parties themselves have given to it.

*Heard January 11, 12.    Decided April 5.*

22 MICH.—48.

Appeal in Chancery from Ionia Circuit.

The bill in this case was filed by Alanson R. Cornell, in the Circuit Court for the County of Ionia in Chancery, to redeem two parcels of land, which the complainant, on the 5th day of December, 1860, conveyed by a warranty deed to the defendant, Joshua S. Hall; which deed, the complainant avers, was intended as a security for a loan of seven hundred and fifty dollars, at that time paid by Hall to complainant; a part of it being paid in cash, and the balance by surrender of two mortgages on the same premises at that time held by Hall.   The defendant denies, in his answer, that the transaction was intended as a loan, but insists that he made an absolute purchase of the property, and at the same time entered into an agreement with the complainant to re-convey the property to him at the end of a year, on being paid at the expiration of the year the sum of nine hundred dollars. Complainant was to be allowed to occupy the premises during the year, and to take off the crops then on it.   The repurchase, on the part of complainant, to be entirely at his option.   At the end of the year the complainant voluntarily surrendered the possession to defendant, who continued in possession until the time of filing the bill. The only written evidence found in the record bearing upon the intention of the parties were an instrument in the form of a bond, drawn by the complainant and signed by the defendant, and a letter written by the complainant addressed to the defendant, which are as follows:—

" *Know all men by these presents :*    That I, Joshua S. Hall, of Orleans, Ionia county, Michigan, am held and firmly bound unto Alanson R. Cornell, of said county, in the penal sum of twelve hundred dollars, lawful money of the United States ; which sum, well and truly to be paid, I bind myself, my heirs, executors and administrators, firmly by these presents.   Signed with my hand and sealed with seal this 5th

day of December, 1860. · *Whereas,* I, the said Hall, have this day sold to said Cornell, the following described lands in said county, to wit:—The northwest fractional quarter of the southwest fractional quarter of section six, town seven north of range six west, forty-four and twenty-eight one hundredths acres; and the northeast quarter of the southeast quarter of section one, town seven north of range seven west; for the sum of nine hundred dollars, which said sum the said Cornell hereby agrees to pay to me, the said Hall, within one year from this date. Now, therefore, if I, the said Hall, shall upon the payment of the said sum of nine hundred dollars, above specified, make, execute and deliver to said Cornell, or his heirs or assigns, a good and sufficient warranty deed, clear of encumbrance, of the lands above described, then this bond shall cease and be null and void, otherwise of full force and effect. And it is expressly agreed that in case said Cornell shall not pay said sum of nine hundred dollars within one year from this date, that then, and in such case, said bond shall cease and be null and void. JOSHUA S. HALL, [ L. S.] "

"NEW ORLEANS, LOUISIANA,<br>November 19, 1866.

"J. S. HALL—*Sir:* You probably are not aware that the deed I gave you for that land, was, under the circumstances, neither more nor less than a mortgage. I have counseled with one of the best law firms in Ionia, and am told that I can redeem the land at any time, by paying you the money you paid in and seven per cent interest on it, and that the use of the land, after deducting the cost of working it, could be taken from the amount. I should have redeemed it before now, but have not had the money to do so, and have not now; and should not have said anything to you about it at present had I not been told that you intended to build a house on the place next summer, and I

did not want you to make any such expensive improvements without knowing just how the matter stood. You will, of course, take such course as you think best. However, I will make you a proposition. I calculate that the use of the farm will pay for all improvements you have made. I will, if you choose to do so, give you $1200 00 (twelve hundred dollars) for a deed of the farm, giving a mortgage for that amount, due in five years, with ten per cent interest, annually. If you do not choose to accept this offer you will, of course, take your own course, foreclose or go on as heretofore. Should you accept you can notify me by letter, directed to A. R. CORNELL, New Orleans, Louisiana, care of Freedmen's Bureau."

The cause was heard upon pleadings and proofs. The Circuit Judge held the transaction to be a sale of the premises by the complainant to defendant; that the condition of the bond, by the defendant to complainant, not having been performed, no rights could be claimed under it, and dismissed the bill. The complainant appeals to this court.

*L. B. Soule*, for complainant.

From the facts, it is clear that the deed in this case is a mortgage,—and "once a mortgage always a mortgage."— *Batty v. Snook, 5 Mich., 231 ; 11 Mich., 538.* And if there is a doubt as to the fact whether the transaction was in the nature of a mortgage, the presumption, in order to avoid a forfeiture, is always in favor of a permission to redeem.—*4 Pick., 349 ; 12 Howard, 139 ; 14 Ill., 428 ; 8 Paige Chan., 231 ; 3 Mich., 482.*

The complainant, Cornell, brings his suit to redeem this deed as a mortgage, any time within twenty years from the time the said deed was made.—*Story's Equity Jur.,* §§ *1028, 1520 ; Morse v. Cobill, 1 Johns. Ch., 385 ; Demarest v. Winkoop, 3 Johns. Ch., 129.* The complainant was not

required to tender the amount of the mortgage before suit brought; a tender in the bill is sufficient.

*A. Williams* and *W. W. Mitchell*, for defendant.

The question in this case is: " Was the instrument of conveyance from Cornell to Hall, in equity, *when delivered,* a deed or a mortgage ? " To determine it, this court will look into the whole history of the transaction prior to the commencement of this suit, not being confined to mere written instruments, to learn *the intention* of the parties; for, *if they intended* said conveyance to be a deed, as we claim, it can only be so construed.—*Swetland v. Swetland, 3 Mich., 482 ; Holmes v. Grant, 8 Paige, 243, 260 ; Brewster v. Baker, 20 Barb., N. Y., 364-9 ; Paddack v. Pardee, 1 Mich., 421 ; Norris v. Showerman, 2 Doug., 16 ; Facey v. Otis, 11 Mich., 213 ; Robinson v. Cropsey, 2 Edw. Ch., 138 ; Glover v. Payne, 19 Wend., 518, 522 ; 4 Kent, 144, and notes e, 1 and 2 ; 2 Pick., 512–15 ; Walk. Ch., 110–11.*

I. It is conceded that if it were a mortgage at its delivery it is so now. But it is no less true, that if it were a deed then, it is so still.—*Holmes v. Grant, 8 Paige, 243 ; 3 Mich., 489, 490.*

II. The law sanctions conditional sales.—*Brewster v. Baker, 20 Barb., N. Y., 370 ; 4 Kent, 144, and notes,* and cases cited,—*2 Pick., 516.*

Cornell's possession of the premises for one year is fully explained.—*2 Hill, N. Y., 328.* It is only when a deed appears to have been intended by the parties as a mortgage, and not as a deed, that courts so construe it.—*Holmes v. Grant, 8 Paige, 243 ; Glover v. Payne, 19 Wend., 518 ; 2 Pick., 515 ; 2 Edw. Ch., 142.* And this, though the deed and defeasance constituted one transaction.—*Holmes v. Grant, 8 Paige, 243 ; Glover v. Payne, 19 Wend., 518, 520–1–2 ; Robinson v. Cropsey, 2 Edw. Ch., 138.* The

consideration of said deed being a fair and adequate one for the premises, at its date, is a strong circumstance tending to show it a sale.—*Holmes v. Grant, 8 Paige, 243, 258; Swetland v. Swetland, 3 Mich., 482; Glover v. Payne, 19 Wend., 520; 2 Edw. Ch., 147.* The bond was not signed by Cornell, or executed in duplicate; but, at most, gave Cornell the privilege therein prescribed, he being, also, of right, the exclusive custodian of it. The defendant, as indicated, had no bond or other evidence of subsisting debt, and no choice in the premises or power to control the course or election of Cornell therein,—the liabilities of said parties not being reciprocal on said bond. There was no verbal or written agreement that Hall was to sell the premises and account for the proceeds, or to foreclose as upon a mortgage, or do otherwise than retain the premises absolutely, if Cornell failed to perform the condition of the bond, as in the case of *Palmer v. Gurnsey, 7 Wend., 248-9, 250; Walk. Ch., 110.* Nor has Cornell complained of any fraud, accident, mistake, or surprise in negotiating, making, or fulfilling the contract, as a ground of relief.— *2 Edw. Ch., 147-8; 2 Pick., 516.* The situation of the parties and the subject-matter of the transaction may be taken into consideration in construing the conveyance or deed.—*Paddack v. Pardee, 1 Mich., 421; Norris v. Showerman, 2 Doug., 16, 25; Facey v. Otis, 11 Mich., 213.* So, also, the intention of the parties.—*Brewster v. Baker, 20 Barb. N. Y., 369; 2 Pick., 515; 1 Mich., 424; 2 Doug., 16.*

GRAVES, J.

This was a bill praying that a deed from complainant to defendant, and a bond of even date from the latter to the former, providing for a reconveyance on certain terms, should be declared a mortgage and that complainant should be allowed to redeem. The bill was sworn to, and required

the defendant to answer under oath, and he answered accordingly. A general replication being filed, the proofs were taken; which, on the part of complainant, aside from his brief and unimportant note of the 3d of December, 1860, his letter from New Orleans, and the bond, consisted only of his own deposition; and on the part of the defendant, consisted of his deposition and the depositions of Ethan S. Johnson and Henry S. Hall. Both parties have relied on the written evidence in the bond and letters. The court below dismissed the bill, and complainant appealed.

A glance at the numerous adjudications in controversies of this kind will suffice to show that each case must be decided in view of the peculiar circumstances which belong to it and mark its character, and that the only safe criterion is the *intention* of the parties, to be ascertained by considering their situation and the surrounding facts, as well as the written memorials of the transaction. The courts do not presume to change the contracts which the parties have made, but endeavor to give them that effect to which they are entitled by the principles administered in equity. While these principles will not permit a transaction which in substance is a mortgage, to have the effect of a sale, there is no principle or maxim of policy which forbids the making of a conditional sale, or which will allow the court to interpose and convert one into a mortgage. A contrary position would invest the court of chancery, in the language of Chief Justice Marshall, in a considerable degree with the guardianship of adults as well as of infants.—*Conway's Executors v. Alexander, 7 Cranch, 218.*

It is unquestionably true, that in cases where upon all the circumstances the mind is uncertain whether a security or a sale was intended, the court, when compelled to decide between them, will be somewhat guided by prudential con-

siderations, and will consequently lean to the conclusion that a security was meant as more likely than a sale, to subserve the ends of abstract justice and avert injurious consequences. And where the idea that a security was intended is conveyed with reasonable distinctness by the writings, and no evil practice or mistake appears, the court will incline to regard the transaction as a security rather than a sale, because in such a case the general reasons which favor written evidence concur with the reason just suggested.

But if upon the whole case it satisfactorily appears that a conditional sale was intended, the transaction must retain the stamp which the parties have themselves given to it.

Since, therefore, the *intention* of the parties is the vital question, it is essential to attend to their situation, the price fixed in connection with the value of the property, the conduct of the parties before and after, and all the surrounding facts so far as they are adapted to develop and explain the nature and object of the arrangement. Without adverting more particularly to the doctrine which relates to this class of cases, we may proceed to notice the circumstances peculiar to the subject of this suit; and first of all, as likely to present the matter in a clearer light, it seems advisable to bring into view certain preliminary facts which are conceded and are necessary for explanation, and then to recur at once to the differing statements of the parties in their depositions, where they assume to detail the verbal arrangement which the deed and bond were meant, for the most part, to carry out. For it is in this part of these two depositions that we find the only material discrepancies in the evidence; and unless the complainant's version, where it varies from defendant's, finds satisfactory corroboration in other features of the record, it cannot be accepted as suffi-

cient to support the bill. His whole case rests upon his personal evidence and the papers; and if that evidence is opposed in an essential part by credible proof made by the defendant, and is not supported by the writings or other satisfactory *media* of proof, he cannot succeed.

In the fall of the year 1860, the complainant was the owner of several contiguous parcels of land, and among them a parcel of forty-four and a quarter acres, described as being the northwest fractional quarter of the southwest fractional quarter of section six, and forty acres described as the northeast quarter of the southeast quarter of section one, all in township seven north, of range seven west, in Ionia county. At this time the defendant held two mortgages given by complainant, one on the first parcel and the other on a separate parcel, which we do not find described in the record. These mortgages were carrying interest at the rate of ten per cent, and the principal sum and interest upon both were due and unpaid, and amounted to about five hundred dollars. The precise sum is not set forth. The complainant had about seven acres of winter wheat growing on the premises described. The defendant was not pressing for payment of these mortgages, and expressed himself to complainant as willing to allow the debts to run if the interest should be paid. A short time before the fifth of December, 1860, when the deed and bond were given, complainant applied to defendant for a loan of two hundred dollars, and proposed to secure that sum with the amount due on these mortgages, by a new mortgage on the two parcels of land first mentioned. The defendant refused to make a loan, but offered to buy these premises and pay nine hundred dollars for them. The complainant then proposed to sell for one thousand dollars, but, without rejecting the defendant's offer, obtained the privilege of considering upon it for two or three days, and

22 MICH.—49.

finally at the end of that interval accepted it. The verbal agreement thus made, as all admit, contemplated an absolute and unconditional sale of the land, including the wheat. At this stage of the business, the defendant, without receding from his first offer which complainant had accepted, made a second and alternative proposition, which it is admitted was accepted and acted upon as the basis of the final arrangement; and it is this second proposition, as already intimated, that in some points the parties disagree about in their depositions. As related by complainant, it was in substance that defendant should cancel the two mortgages, and let complainant have money enough, together with what they called for, to make seven hundred and fifty dollars; that complainant should make an absolute conveyance of the eighty-four and a quarter acres to defendant, but should have the right to redeem in a year by paying nine hundred dollars, which would be the same as a loan of seven hundred and fifty dollars at an interest of twenty per cent; that defendant should give complainant a contract to re-convey in case the nine hundred dollars should be paid within the time specified.

The complainant, however, admitted on his cross-examination that he was to have the use of the property for one year, and also that something was said in that connection to the effect that the amount which would come off of the land in that time would be as much as one hundred and fifty dollars, and he also stated that he understood that the deed he was to give would be a mortgage, though he did not know how the defendant understood it. The version given by the defendant is, that he was to buy the land and give nine hundred dollars for it; that this sum was to be paid by giving up the two mortgages and paying so much money in addition as would make a present cash payment of seven hundred and fifty dollars; that the remaining one hundred

and fifty dollars was to be paid by allowing complainant to retain the wheat and occupy and use the premises for a year, with the right to re-purchase within the year for nine hundred dollars, and that defendant should oblige himself by bond to re-convey at the end of the year, on condition of being paid nine hundred dollars within that time. The defendant also denies in his deposition that either party understood that the deed and bond were to be security. With these party narratives of the bargain before us, we proceed to notice the other material facts. The second proposition being accepted on the 5th of December, 1860, the parties immediately proceeded to carry it out. The complainant deeded the land to defendant, by an instrument absolute in form, and the latter canceled the mortgages on the record, gave to complainant a sum of money which, when added to that called for by the mortgages, amounted to seven hundred and fifty dollars, and executed the bond for re-conveyance, which complainant had himself drawn. The circumstance which appears to have urged the complainant to obtain money and to seek the arrangement with that view, was not any pressure upon him by defendant, but it was that the time for redeeming certain of the lands in question from a foreclosure, which it seems had theretofore taken place at the instance of a third party, was nearly expired, and the means were wanted to make redemption, and this circumstance was unknown to defendant until he was about putting his name to the acknowledgment of satisfaction of his mortgages. The complainant then paid to the proper officer the redemption money; and it is a noticeable fact, in this connection, that the cash obtained by complainant was considerably more than was needed to effect the redemption.

The business being thus concluded, the complainant remained in possession during the year specified in the bond,

took off the wheat and had the use of the premises, and then, failing to pay according to the stipulation, yielded possession to the defendant, who entered under the deed,. and has since continued to occupy, enjoy and improve the premises as absolute owner. The complainant went to the southern states in October, 1866, and returned in July, 1867,. and except during this interval resided near the defendant,. and saw him as often as once a month until the bill was filed, and never intimated to him that he deemed the transaction as other than a sale until late in 1866, and then he informed him by letter from New Orleans, under date of the 19th of November, that he, the defendant, was "*probably not aware that the deed was, under the circumstances, neither more nor less than a mortgage;*" that he had counseled with one of the best law firms in Ionia and was told that he could redeem the land at any time by paying the money *received* from defendant, with *interest* at *seven* per cent, and that the use of the land, after deducting the cost of working it, could be taken from the amount, and further, that he should have redeemed it before, but lacked the money. In seeking to ascertain whether the parties intended a sale or security, at the time of the bargain, this piece of evidence is. alone quite expressive. .It shows that as late as the fall of 1866, the complainant believed the defendant to be unaware that he claimed the deed to be a mortgage, and it also *implies that complainant had found it needful to be* instructed by counsel as to whether the deed and bond after all embodied the indispensable requisite of a mortgage, which secures to the mortgagor what is called the "right to redeem." But the force of this evidence is somewhat. increased when we find in the bill that this advice was not sought until four or five years after the transaction, and three or four subsequent to the surrender of possession to defendant, and when the property had become greatly

enhanced in value by various causes, and among them by improvements made by defendant. The statement is, that about two years before the bill was filed the complainant took the bond to Soule & Spencer, "for the purpose of counseling them on the subject of his *right to redeem.*" We find in the record another item of proof which, though not of great weight, possesses some significance as an act of complainant, indicating his contemporaneous understanding of the nature of the arrangement with defendant. In 1863, as appears from the deposition of Henry S. Hall, the latter had a conversation with complainant about buying a parcel of land of him, and that the former, in speaking of the price demanded, alluded to the sum paid by defendant in the bargain in question, and distinctly spoke of that bargain as a sale, and the complainant in making reply not only did not impugn this construction, but on the contrary seemed to regard it as correct.

We have seen that defendant insists that it was part of the arrangement that complainant should have the use of the property for the first year, and that this was considered as equivalent to one hundred and fifty dollars; that complainant admits that the right to use the land for such time was part of the bargain, and that something was said to the effect that the products would be worth one hundred and fifty dollars. On referring to the bill we observe that complainant there states, upon oath, that in each year after the first the rents and profits have been three hundred dollars, and we discover nothing in the record to show why they were not worth as much the first as the second year. In view of these statements and admissions, and the other facts in the case, we think that it fairly appears that the right to occupy for the year, which was secured to complainant, was valued at one hundred and fifty dollars, and was worth that sum.

The evidence satisfactorily shows that nine hundred dollars would have been a fair price for the land if sold upon the terms of giving immediate possession, and without reservation or conditions. The complainant had, on deliberation, agreed to sell the land and wheat for that price in money, after deducting the amount called for by the mortgages. As it was, he received seven hundred and fifty dollars in the same way for the land alone, but upon terms which gave him the use of the property and deprived the defendant of it for a year, which was equal to one hundred and fifty dollars, and he also obtained the right to repurchase within that period if he could make any thing by so doing.

We may therefore consider that when complainant received seven hundred and fifty dollars for his deed, on the terms mentioned, he received and defendant gave a fair purchase price.

It appears on a careful reading of the record that defendant steadily declined to make a loan, and that complainant dropped the idea of getting one when he accepted the first proposition, and no proof is discovered that he afterwards intimated in words that the negotiations involved one. The old demands were canceled, and defendant received no covenant or undertaking by which he could compel complainant to pay any thing. The bond drawn by complainant, when separately considered, imports an agreement to sell, and does not imply the existence of any debt owing by complainant to defendant, and we discover no evidence that the parties when their bargain was finished supposed their relation to be that of debtor and creditor. The conduct of complainant was for several years accordant with the notion that a conditional sale had been made, and was radically inconsistent with the idea that he was a mere mortgagor. The surrender of the property upon

default in payment, and the omission for so many years to whisper to defendant that he claimed any right, inconsistent with defendant's absolute ownership, when he had frequent opportunities to do so, and knew that the latter was making improvements as owner and under the belief that the title derived from the transaction in question was indefeasible, are facts extremely persuasive against the validity of the present claim; and when we find them fortified by the other material circumstances and observe that the bond tallies with the theory indicated by the conduct of the parties and the leading facts, we are constrained to decide that the parties intended a conditional sale and not a security, and that the bill was, therefore, properly dismissed. The decree below must be affirmed, with costs.

The other Justices concurred.