## SMITH VS. CROSBY and others.

DEED: MORTGAGE. *Certain papers and transactions held not to convert a deed absolute on its face into a mortgage.*

1. Defendants being in possession of real estate under an unexpired lease from plaintiff, the following instruments were exchanged and took effect on the same day in 1859: 1. A warranty deed from plaintiff, for the consideration of $1,200 therein named, conveying the property absolutely, in fee, to the defendant C. 2. An agreement of C. to reconvey the property to plaintiff (with covenants against his own acts), if the latter should pay C. $1,200 on the 4th of August, 1861; with covenant that time should be of the essence of the contract, and with a further agreement that C. should have possession and enjoyment of the property until said sum was paid. 3. A quit-claim deed from plaintiff to C.; and 4. An agreement that said quit-claim deed should be placed in the hands of one X., to be held by him until said August 4, 1861, to be delivered by him to plaintiff in case of payment of the $1,200 by plaintiff to C. on that day, and otherwise to be delivered to C. This agreement contained a recital of the essential terms of the instrument secondly above described, and constituted X. plaintiff's attorney to hold and deliver the quit-claim deed as above stated. 5. A lease of the same property from plaintiff to defendants for a term of years commencing September 10, 1861; to take effect only in case defendants gave plaintiff written notice, at least three days before said last named date, that they elected to take under the lease. On the day of the delivery of these papers, defendants' prior lease was surrendered by them to plaintiff. None of the papers contained any agreement by plaintiff to pay $1,200 at any time. *Held,* that, upon their face, said papers (with the surrender of the prior lease) do not show the relation of debtor and creditor to have existed between plaintiff and C.; and the transaction was an absolute conveyance and a conditional agreement to reconvey, and was *not a mortgage.*

2. In this action to redeem from the lien of an alleged mortgage, etc., this court regards the *parol* evidence as not sufficient to justify it in holding, contrary to the finding and judgment of the court below, that the real transaction was a loan of money by C. to plaintiff, secured by the instruments above described; and it therefore affirms a judgment for defendants.

APPEAL from the Circuit Court for *Dane* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought by *Ann M. C. Smith,* with *A. Hyatt Smith,* her husband, and *Charles D. Mead,* the trustee of her separate estate, for the purpose of redeeming certain real estate from the lien of what is claimed to be a mortgage thereon, given by *Ann M. C. Smith* to the defendant *J. B. Crosby,* to secure the payment of a loan of $1,200, and for an accounting by the defendants for the rents and profits of the mortgaged premises from the time it was alleged said mortgage became due.

" The transaction which was alleged to be the mortgage, took place about the 4th of August, 1859.

" The evidence shows that at the time of the giving of the alleged mortgage by said plaintiff, and for a year or more previous thereto, the defendant *J. B. Crosby,* as executor of the estate of Nathaniel Crosby, and two other persons, Horatio N. Busk and Adam Andre, had been in possession of the property claimed to be mortgaged, under a lease from the plaintiff, which was still in force and unexpired. The written evidence introduced on the part of the plaintiff to establish the fact that the property had been mortgaged by her to said *Crosby* to secure a loan of $1,200, was as follows:

" 1. A deed of warranty, with full covenants, bearing date the 3d day of August, 1859, by which *Ann M. C. Smith* and her husband, for the consideration of $1,200 mentioned in said deed, conveyed the property in question to the defendant *Crosby* in fee, absolutely, without any conditions whatever.

" 2. An article of agreement bearing date the 4th day of August, 1859, by which said *Crosby* agreed to convey the same property described in the deed, to the said *Ann M. C. Smith,* on condition that the latter should pay to *Crosby* $1,200 in two years from the date of the contract; and it was covenanted that time should be of the essence and a material part of the contract, and that, in case the said *Smith* failed to pay the said

$1,200 on the 4th day of August, 1861, the contract should be null and void.    It contained a further understanding that *Crosby* was to have the possession and enjoyment of the property agreed to be sold, until the $1,200 was paid; and, if the said sum was paid according to the terms of the contract, he agreed to convey the property to the said *Smith* by a good and sufficient deed, containing covenants against his own acts.

" 3.  A quit-claim deed, made by *Ann M. C. Smith* and her husband to said *Crosby*, bearing date the 4th day of August, 1859, purporting to convey the same premises to the said *Crosby* in fee.

" 4.  A written agreement, by which it was agreed that said quit-claim deed should be placed in the hands of I. C. Sloan, to be held by him until the 4th day of August, 1861, and on condition that if *Ann M. C. Smith* should pay on that day to *Crosby* the sum of $1,200, then the deed was to be delivered to her; but in case she failed to pay said sum on the day mentioned, then the same was to be delivered to *Crosby;* and the contract further constituted said Sloan the attorney of *Ann M. C. Smith* and her husband for the purposes of holding and delivering said deed according to the terms of said agreement. This contract begins with the following recital:  ' Whereas, an agreement in writing, bearing date this 4th day of August, A. D. 1859, between *James B. Crosby* of the first part and *Ann M. C. Smith* of the second part, has been duly executed by the said parties thereto, in and by which said agreement the said *James B. Crosby* agrees to sell and convey unto the said *Ann M. C. Smith* the right and privilege of drawing and using a certain amount of water from the water power in the city of Janesville, commonly called the Monterey Water Power, which said right and privilege is more fully described in the said agreement, to which reference is hereby made, on condition that said *Ann M. C. Smith* shall punctually pay unto said *James B. Crosby* the just and full sum of $1,200 on the 4th day of August, 1861, the time of payment being

considered and made material and of the essence of said agreement.'

" 5. A lease of the same real estate, executed by *Ann M. C. Smith* and her husband to Busk, Andre and *Crosby*, executor, etc., bearing date on the 2d day of August, 1859, by which the parties of the first part leased unto the parties of the second part the same water rights contained in the other contracts and deeds, for a term of years therein mentioned, the term to commence on the 10th day of September, 1861. This lease was made to take effect only upon the conditions that the lease and the conditions contained therein should not be operative or binding upon the parties of the second part unless they gave the parties of the first part notice in writing, at least three days before the said 10th day of September, 1861, that they elected to use said water under this lease; and in case said notice were given, then the lease to be operative and binding.

" This lease was signed by *Ann M. C. Smith* and her husband, and by H. N. Busk, Adam Andre and *James B. Crosby*, executor of the estate of Nathaniel Crosby, deceased.

" 6. The lease of the same property, theretofore held by the same parties as lessees of *Ann M. C. Smith* and her husband, was, on the day of delivery of all the other papers above referred to, surrendered by the said lessees, and the surrender accepted by the lessors.

" The evidence further shows, and is undisputed, that though some of the papers above referred to bear date on different days, they were in fact all delivered so as to take effect on the same day."

Upon the facts found, the circuit court held that there was no loan from *J. B. Crosby* to *Mrs. Smith*, and no mortgage from the latter to *Crosby;* that there was an absolute sale and conveyance of the property described in the warranty deed of August 4, 1859, with the privilege on the part of *Mrs. Smith* to repurchase the property on specified conditions, none of which had ever been performed by her; that the conditional agree-

ment to reconvey had been fully cancelled by the quit-claim deed above mentioned; and that plaintiffs were not entitled to any part of the relief demanded..

From a judgment in accordance with these findings, the plaintiff appealed.

*A. Hyatt Smith*, for the appellant.

For the respondent, there was a brief by *Cassoday & Carpenter*, and oral argument by *Mr. Cassoday*.

TAYLOR, J. It is insisted by the learned counsel for the appellant, that the conveyances and contracts above described, unexplained by any parol evidence, show that the transaction was a loan of the sum of $1,200 by the said *Crosby* to the said *Ann M. C. Smith*, to be paid in two years from the date of such loan; and that, instead of receiving interest on the money loaned, he was to have the use of the property, discharged of the rent secured to her by the lease, the surrender of which was accepted by her at the time of making the loan. On the other hand, the learned counsel for the respondents insists that the writings show an absolute sale of the property — which was a right to the use of certain water taken from the Monterey dam in the city of Janesville — by the plaintiff to *Crosby*, accompanied by an agreement on his part that, in case the appellant would pay him the sum of the purchase money punctually in two years from the sale thereof, he would reconvey the same property to her; he, in the meantime, to have the possession and use of the property purchased by him. Independent of any evidence explanatory of the transaction, and relying only upon the legal effect of the written instruments offered in evidence, we are compelled to concur in the view of the case taken by the counsel for the respondents. The deed and contract, which are the material papers in the case, do not show the transaction to be a mortgage. The deed is absolute on its face, and does not indicate anything but a sale on the part of the appellant, and a purchase on the part of

*Crosby.* It certainly does not tend to show that there was the relation of debtor and creditor existing between the appellant and *Crosby.* If it raises a presumption of indebtedness at all, it is the presumption that *Crosby* might be indebted to the appellant for the purchase money; certainly not that she was indebted to him. The contract made at the same time for the conditional reconveyance of the property to the appellant does not contain any covenant or agreement on the part of the appellant to pay the sum of $1,200, or any part of it. It is simply an agreement to convey, on condition of the payment of a fixed sum at a specified date, and does not create the relation of debtor and creditor between the parties. The surrender of the lease under which the property was formerly held by the grantee with others, is entirely consistent with the theory that he was a purchaser of the property absolutely in fee; and such surrender would be inconsistent with the theory that the deed was given as security for a loan. The possession by the grantee in the deed under it is consistent with the theory of a purchase, and inconsistent with the theory of a mortgage. The making of the quit-claim deed was a proper precaution to cut off any possible right which the vendee in the contract might claim in equity, to have the contract enforced in her favor, notwithstanding she might not pay the purchase price in accordance with the terms of the contract. The giving of the conditional lease, and the acceptance of the same by the same parties who held the lease at the time of the purchase, was a proper precaution in case the appellant repurchased the property under her contract with *Crosby.* None of the written evidence is inconsistent with the legal effect of the warranty deed from the appellant and her husband to *Crosby.* Standing alone, they show an absolute conveyance from the appellant to the defendant *Crosby*, and not a conveyance by way of mortgage as a security for money loaned. It is said that the intention of the parties is the real criterion by which courts must be guided in determining whether in a

given case the tranaction is a sale or a mortgage. Jones on Mortgages, § 258. In this case, so far as the intention of the parties can be ascertained from the written contracts between them, there is nothing to show anything in the character of a mortgage. They do not evidence a loan, or in any way show a liability on the part of the appellant to repay the $1,200 which was the consideration for the deed.

This case, upon the papers alone, is a much stronger case than that of *Conway's Ex'rs v. Alexander*, 7 Cranch, 218. In that case the supreme court of the United States held, that when land had been conveyed to a third person in trust to reconvey to the grantor if he should repay the purchase money before a day named, and if not, then to convey to the purchaser, in the absence of a bond, or note, or other evidence of indebtedness, the transaction must be regarded as a conditional sale. Chief Justice MARSHALL, who delivered the opinion of the court, said: " To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the courts of chancery, in a considerable degree, the guardianship of adults as well as infants. Such contracts are not prohibited either by the letter or the policy of the law. . . . In this case the form of the deed is not in itself conclusive either way. The want of a covenant to repay the money is not complete evidence that a conditional sale was intended, but it is a circumstance of no inconsiderable importance. If the vendee must be restrained to his principal and interest, that principal and interest ought to be secure. It is therefore a necessary ingredient in a mortgage, that the mortgagee should have a remedy against the person of the debtor. If this remedy really exists, its not being reserved in terms will not affect the case. But it must exist in order to

justify a construction which overrules the express words of the instrument. Its existence in this case is certainly not to be collected from the deed. There is no acknowledgment of a preëxisting debt, nor any covenant for repayment." The foregoing remarks of the late learned chief justice of the supreme court of the United States will apply with much greater force to the case made upon the face of the written evidence in the case at bar, than they did to the case then under consideration. For a further illustration of the difference between a mortgage and a sale with a condition or agreement that the grantor may repurchase the property at a future time for a specified sum, see Jones on Mortgages, §§ 257–261, and cases cited in his notes; *Wilcox v. Bates,* 26 Wis., 465; *Glendenning v. Johnston,* 33 Wis., 347.

It being clear that upon the written evidence the appellant failed to make out any right to redeem the premises upon the ground that the defendants held the possession of them by virtue of a mortgage and not by virtue of a deed, the only remaining question is, whether the parol evidence introduced by the respective parties changed the rights of the parties as they appeared from the writings introduced, and satisfactorily showed that, notwithstanding the absolute nature of the conveyance made, the transaction was in fact a loan of money by the defendant *Crosby* to the appellant, and these writings were given to secure such loan, and not with the intention of passing the absolute title to the said defendant.

Upon this point, after a full hearing of the case by the learned circuit judge, he has found against the appellant. After a careful examination of the whole evidence, we are satisfied that this finding is sustained by the evidence, and that there certainly is not any such preponderance of the evidence against such finding as would justify this court in reversing the judgment on the ground that such finding is clearly against the weight of evidence. On the contrary, looking simply at the evidence as it appears in the record, without

the advantage of seeing the witnesses in court, and witnessing their appearance and the manner of giving their testimony, we think the clear preponderance of the evidence is in favor of the finding of the learned circuit judge. Upon the whole record, we are satisfied that the judgment of the court below is fully sustained by the evidence, and that no errors have intervened which entitle the appellant to a reversal of the same.

*By the Court.*— The judgment of the circuit court is affirmed.