ROCKWELL vs. HUMPHREY and others.

*March 19 — April 4, 1883.*

*(1, 2) Mortgage or conditional sale?  (3) Effect of failure to renew chattel mortgage.*

1. When the language of a written instrument is equivocal, the intention of the parties, as evinced by the whole transaction and attending circumstances, is the true criterion for determining whether such instrument constitutes a conditional sale, a conveyance, or a mortgage.

2. Upon the evidence stated in the opinion (including the facts that the relation of debtor and creditor had existed between the parties for eighteen months before the instrument was executed, and that there is nothing in the instrument to indicate that such relation was to be altered thereby), a certain written instrument is held to be a chattel mortgage.

3. The failure to renew a chattel mortgage within two years from the filing thereof does not render it invalid as against a prior mortgagee whose lien is subsequent thereto.   R. S., sec. 2315; *Lowe v. Wing,* 56 Wis., 31.

APPEAL from the Circuit Court for *Walworth* County. The case is thus stated by Mr. Justice CASSODAY:

" This action was brought to determine the interest of the plainiff in the undivided one half of an abstract under a

written instrument hereinafter set forth, and to compel the defendant *Humphrey* to account for and pay over to the plaintiff a share of the use and profits thereof, and in default thereof that said half of the abstract be sold and the plaintiff paid out of the proceeds thereof, and for general relief. *Curtis* was made a defendant, and his interest alleged as a subsequent mortgagee. The defendant *Humphrey* answered, denying any considerations for the written instrument, and setting up a counterclaim. The defendant *Curtis* answered, setting up his mortgage and the debt thereby secured, and also the giving of a second mortgage by way of renewal, January 16, 1879, and asked that his first chattel mortgage be declared a lien prior to said written instrument. The following facts are admitted or found by the court:

" Le Grand Rockwell, father of the plaintiff, died in 1869, leaving, him surviving, the plaintiff and two other children, and a widow, Frances Rockwell, who was married to the defendant *Humphrey* in the fall of 1872, who thereupon went to living with the widow on the Rockwell farm. The plaintiff, having received from his father's estate $1,000, lent and advanced the same to the defendant *Humphrey* in February, 1874, and no part thereof, nor interest thereon, has ever been paid, as found by the court. The court further found, in effect, that in the fall of 1874 the defendant *Humphrey* bought of one Noyes the undivided one half of a set of abstract books of the public records of Walworth county, Wisconsin, for the sum of $3,000, and took a bill of sale therefor in his own name; that November 1, 1875, the defendant *Humphrey* executed and delivered to the plaintiff a written instrument, of which the following is a copy, to wit:

"'ELKHORN, WIS., November 1, 1875.

"'Received of *Henry Rockwell* $1,000, for the purpose of purchasing of C. A. Noyes, Jr. an undivided one half interest in a set of abstract books of the public records of real

estate transfers of Walworth county for the sum of $3,000 for said one half interest; and in consideration of the $1,000 aforesaid, I hereby give and grant to said *Rockwell* an undivided one third interest in the said one half interest aforesaid, or in lieu thereof to pay to him the said sum of $1,000, and the interest thereon at the rate of ten per cent. per annum until paid; the bill of sale bearing date October 27, 1874, and schedule of property so purchased hereunto attached.    .    .    B. B. HUMPHREY.'

"It further appears, and is not disputed, that on January 11, 1877, the defendant *Humphrey* executed and delivered to his brother-in-law, the defendant *Curtis*, a chattel mortgage on the undivided one half interest of the abstract for the sum of $2,000, to whom he was then liable for that amount, and the same was duly filed with the clerk on that day.    February 20, 1877, the wife of the defendant *Humphrey*, and the mother of the plaintiff, died.    February 24, 1877, the plaintiff, with previous knowledge of the existence and filing of said *Curtis* mortgage, filed the written instrument so received by him from the defendant *Humphrey* in the clerk's office as a chattel mortgage; and February 5, 1879, renewed the same, by affidavit annexed thereto and filed with the clerk, and the court found there was due thereon $1,597.17.    The court found there was due and unpaid on the *Curtis* mortgage $2,557.67; that the defendant *Humphrey* was the owner of the undivided one half of the abstract at the time of giving said written instrument and said *Curtis* mortgage respectively, and was still such owner.    The court found, as conclusions of law, that the written instrument, so taken by the plaintiff, was, in effect, a chattel mortgage, but subordinate and subject to the first *Curtis* mortgage, and ordered judgment against *Humphrey*, and in favor of the plaintiff and *Curtis* respectively, and judgment of foreclosure and sale of the *Curtis* mortgage pursuant to the findings, and that such judgments be respectively satis-

fied out of the proceeds of the sale in the order indicated. Judgment was thereupon accordingly entered, from which the plaintiff brings this appeal."

For the appellant there was a brief by *Winsor & Sprague*, and oral argument by *Mr. Sprague.* They contended, *inter alia*, that the written instrument in controversy was a bill of sale. The fact that the consideration just equaled the value or purchase price of the interest granted to *Rockwell* is evidence that the transaction was a sale and not a mortgage to secure an indebtedness. Men do not ordinarily take security for a debt on property only equal to the debt to be secured. 1 Jones on Mortg., sec. 275; *Carr v. Rising*, 62 Ill., 14–19. When the transaction is a sale with a right of repurchase and the grantor claims it to be a mortgage a bill will lie to have the sale established. 1 Jones on Mortg., sec. 262; *Rich v. Doane*, 35 Vt., 124. The contract does not purport to be made to secure a debt. No acknowledgment of a debt and no promise to pay the $1,000 is made. The defendant reserved an option to repurchase by paying back the $1,000 and interest, but he did not bind himself to pay, and the plaintiff could not enforce that option. It is a necessary ingredient in a mortgage that the mortgagee should have a remedy against the person of the debtor. 1 Jones on Mortg., 244, 259, 260, 264; *Fuller v. Pratt*, 10 Me., 197; *Conway v. Alexander*, 7 Cranch, 218. A sale in connection with an agreement for repurchase comes very near in form and substance to a mortgage, but the rights of the parties under the instruments are very different. 1 Jones on Mortg., sec. 262; *Holmes v. Grant*, 8 Paige, 243; *Brown v. Dewey*, 2 Barb., 28; *Glover v. Payn*, 19 Wend., 518, and cases cited. The existence of a debt is the true test whether the transaction is a sale or a mortgage. A debt, either pre-existing or created at the time, is an essential requisite of a mortgage. 1 Jones on Mortg., sec. 265; *Glover v. Payn, supra; Sutphen v. Cushman*, 35 Ill. 186; *Henley v. Hotaling*, 41 Cal., 22;

*Horn v. Keteltas*, 46 N. Y., 605; *Musgat v. Pumpelly*, 46 Wis., 660. The character of the transaction is fixed at its inception and is what the intention of the parties makes it. The recording of the instrument as a mortgage does not make it such. 1 Jones on Mortg., 256, 263; *Kearney v. Macomb*, 16 N. J. Eq., 189. Unless the relation of debtor and creditor existed at the beginning with reference to the consideration of the conveyance, and continues so that the grantee would have a right to call upon the grantor to supply any deficiency that might arise in case of foreclosure, the transaction is a conditional sale. *Robinson v. Cropsey*, 2 Edw. Ch., 138; *Saxton v. Hitchcock*, 47 Barb., 220; *Slowey v. Mc-Murray*, 27 Mo., 113; *Hoopes v. Bailey*, 28 Miss., 328; *Johnson v. Clark*, 5 Ark., 321; *Blakemore v. Byrnside*, 7 id., 509. The rights of the parties must be reciprocal. *Williams v. Owen*, 10 Sim., 386; *Davis v. Thomas*, 1 Rus. & M., 506; *Shaw v. Jeffery*, 13 Moore P. C., 432; *Goodman v. Grierson*, 2 Ball & B., 274; *Alderson v. White*, 2 DeG. & J., 97; *Tapply v. Sheather*, 8 Jur. (N. S.), 1163. This instrument in suit appears on its face to be a conditional bill of sale, and in order to convert it into a mortgage "the evidence should be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage." 1 Jones on Mortg., sec. 260; *Swetland v. Swetland*, 3 Mich., 482.

For the respondents there was a brief by *Smith & Wheeler* and *T. D. Weeks*, and oral argument by *Mr. Weeks*.

CASSODAY, J. Whether a given written instrument constitutes a conditional sale, a conveyance, or a mortgage, is a question which has often perplexed the courts. When the language of the instrument is equivocal, the intention of the parties, as evinced by the whole transaction and the attending circumstances, seems to be the true criterion. *Goodman v. Grierson*, 2 Ball & Beatty, 278; *Williams v. Owen*, 5 Mylne & Craig, 306; *Clark v. Henry*, 2 Cow., 324; *S. C.*,

*affirmed*, 7 Johns. Ch., 43; *Edrington v. Harper*, 3 J. J. Marsh., 354; *Hughes v. Sheaff*, 19 Iowa, 343; *Cornell v. Hall*, 22 Mich., 377; *Rich v. Doane*, 35 Vt., 125; *Pitts v. Cable*, 44 Ill., 105. Thus, in *Goodman v. Grierson, supra*, Lord Chancellor MANNERS, in answer to the contention that the transaction could not be a mortgage because there was no bond collateral to the deed, nor any convenant to pay, said: " It is quite clear that if the *intention* were that it should be a mortgage, the absence of a covenant and collateral bond would not make it the less so. This was decided in *King v. King*, 3 P. Wms., 358, where Lord TALBOT said it did not vary the transaction, for that every mortgage implied a loan, and every loan implied a debt, for which the mortgagor's personal estate was liable; and although an action of covenant would not lie, still it might be a mortgage." So Lord Chancellor COTTENHAM, in *Williams v. Owen, supra*, said: " That this court will treat a transaction as a mortgage, although it was made so as to bear the appearance of an absolute sale, if it appear that the parties *intended* it to be a mortgage, is no doubt, true; but it is equally clear that if the parties intended an absolute sale, a contemporaneous agreement for a repurchase, not acted upon, will not, of itself, entitle the vendor to redeem."

In *Edrington v. Harper, supra*, Chief Justice ROBERTSON, of Kentucky, said: " It is often very difficult to discriminate between mortgages and conditional sales. Every case must be determined by a consideration of its own peculiar circumstances. The intention of the parties is the only true and infallible test; that intention is to be collected from the condition or conduct of the parties, as well as from the face of the written contract." This was substantially adopted by the supreme court of Iowa in *Hughes v. Sheaff, supra*, where Chief Justice WRIGHT added: "And hence the court must take into consideration the price, the circumstances, all the antecedent facts, the situation of the parties, and from these determine

the true nature of the transaction. These differ, as we know, as the names of the parties differ, and they so influence the determination in each case that it is next to impossible to deduce from them any general, safe, and comprehensive rule." In *Cornell v. Hall, supra,* it was held by the supreme court of Michigan that " the only safe criterion in determining controversies arising out of such transactions is the intention of the parties, to be ascertained by considering their situation and the surrounding facts, as well as their writings."

Where the language of the instrument is equivocal, and the relation of debtor and creditor is not created by the transaction and never existed, and the vendee takes and retains possession of the property, and its value is not perceptibly in excess of the consideration paid, and there is nothing to indicate an intent to transfer the property as a mere security, the transaction has usually been held to be a conditional sale. *Goodman v. Grierson, supra; Williams v. Owen, supra; Perry v. Meddowcroft,* 4 Beav., 197; *Conway v. Alexander,* 7 Cranch, 237; *Holmes v. Grant,* 8 Paige, 243; *Baker v. Thrasher,* 4 Denio, 493; *Saxton v. Hitchcock,* 47 Barb., 220; *Hughes v. Sheaff, supra; Flagg v. Mann,* 14 Pick., 467; *Woodward v. Pickett,* 8 Gray, 617; *Rich v. Doane, supra; West v. Hendrix,* 28 Ala., 226; *Pearson v. Seay,* 35 Ala., 612; *Logwood v. Hussey,* 60 Ala., 417; *Ford v. Irwin,* 18 Cal., 117; *Henley v. Hotaling,* 41 Cal., 22; *Slowey v. McMurray,* 27 Mo., 113; *McNamara v. Culver,* 22 Kan., 661; *Hoopes v. Bailey,* 28 Miss., 328; *Smith v. Crosby,* 47 Wis., 160. But in several of these cases, as in *McNamara v. Culver,* it is held that " the test is the existence or non-existence of a debt. If, after the transaction, no debt remains, there is no mortgage, but only a conditional sale."

On the other hand, where the relation of debtor and creditor is created by the transaction, or previously existed, and by express language or fair implication continues, and the

possession is retained by the vendor, and the value of the property is greatly in excess of the consideration paid, the transaction has usually been held to be a mortgage. *Clark v. Henry, supra; Roach v. Cosine,* 9 Wend., 227; *Murray v. Walker,* 31 N. Y., 399; *Horn v. Keteltas,* 46 N.Y., 605; *Carr v. Carr,* 52 N. Y., 251; *Russell v. Southard,* 12 How. (U. S.), 139; *Villa v. Rodriguez,* 12 Wall., 323; *Cornell v. Hall, supra; Cooper v. Brock,* 41 Mich., 488; *Rice v. Rice,* 4 Pick., 349; *Eaton v. Green,* 22 Pick., 526; *Murphy v. Calley,* 1 Allen, 107; *Gifford v. Ford,* 5 Vt., 532; *Blodgett v. Blodgett,* 48 Vt., 32; *Pearson v. Seay,* 38 Ala., 643; *Wilson v. Giddings,* 28 Ohio St., 554; *Plato v. Roe,* 14 Wis., 453; *Wilcox v. Bates,* 26 Wis., 465; *Ragan v. Simpson,* 27 Wis., 355; *Musgat v. Pumpelly,* 46 Wis., 660; *Starks v. Redfield,* 52 Wis., 349. In *Russell v. Southard, supra,* Mr. Justice CURTIS said: "The deed and memorandum certainly import a sale," and yet from all the evidence in that case they were held to constitute a mere security, and hence a mortgage. In *Wilson v. Giddings, supra,* the fact that the grantor continued in possession, controlling, using, and improving the property as his own, and receiving and using the rents and profits thereof as his own, and paying the taxes thereon, were regarded as significant. Once a mortgage, always a mortgage, is the rule generally recognized in the cases. So the want of a personal agreement by the borrower to repay the money is not conclusive that the conveyance was not intended as a mortgage, but merely a circumstance to be considered with the other evidence in the case. This was held in *Horn v. Keteltas, supra.*

Many other cases might be cited to the same effect. The difficulty of discriminating between mortgages and conditional sales grows out of the fact that either through a misapprehension of the law by one or both of the parties, or a design on the part of one or both to conceal the real purpose of the transaction, it is often found to be mixed and con-

fused, and hence containing some of the incidents of a mortgage, and also of a conditional sale. As a way out of this difficulty, courts have generally held the transaction to be a mortgage in all doubtful cases, because the ends of justice are the more apt to be attained, and fraud and oppression more likely to be prevented, by such a construction. *Russell v. Southard, supra; Edrington v. Harper, supra; Hughes v. Sheaff, supra; Cornell v. Hall, supra; Rich v. Doane, supra.* From a careful examination of the authorities cited, it would seem that the precise language employed in the writing is not always conclusive. Courts of equity more readily yield to the real nature of the transaction, as shown by all the evidence and circumstances in the case, including the relative situation, and the precedent, accompanying, and subsequent acts of the parties.

Observing the rules of law thus indicated by the authorities, we are next to apply them to the facts of the case before us. It is true that one sixth of the abstract covered by the instrument in question seems to have been, at the time it was purchased by *Humphrey*, of substantially the same value as the money advanced by the plaintiff to *Humphrey;* but it is also true that he retained the possession of the abstract, with no objection or claim of ownership on the part of the plaintiff, from the time he purchased it, in October, 1874, down to about the time of the commencement of this action, in February, 1880. During all that time *Humphrey* ran, managed, and controlled the half of the abstract so purchased by him as his own, and received and converted to his own use the rents, issues, and profits thereof, without any claim or objection on the part of the plaintiff, notwithstanding his knowledge of the facts. Presumptively, *Humphrey*, during the time, paid the taxes on half of the abstract and continually increased its value by adding thereto references to the constantly accumulating records of the county. But the plaintiff's version of the transaction is still more signifi-

cant. He testified that he received the money from his mother, and gave the certificate of deposit to *Humphrey* in the fore part of February, 1874, for the purpose of purchasing an interest in the abstract business, in the abstract books described in this suit; that he did not think *Humphrey* then purchased an interest in the abstract books, but he supposed he did afterwards,— he did not know the time; that in September, 1875, he received from *Humphrey* the written instrument in question. This is all the information we get on the precise question from the plaintiff.

For whom was the purchase to be made? The plaintiff fails to tell us. He states no fact from which we are authorized to hold that *Humphrey* received the certificate for the purpose of purchasing one sixth of the abstract for the plaintiff. On the contrary, the fair inference from his testimony is that he let *Humphrey* have the money to enable him to purchase an interest in the abstract. There is nothing in the plaintiff's subsequent conduct indicating that he supposed he had an interest in the abstract. It was not purchased by *Humphrey* for more than six months after he received the money or certificate from the plaintiff. There is nothing to indicate that during that time *Humphrey* held the money or certificate as agent or trustee of the plaintiff, but rather as his own. This being so, the relation of debtor and creditor was created between them in February, 1874. That relation continued, according to the plaintiff's version of the matter, down to the time *Humphrey* purchased the half interest in the abstract. He tells us of nothing then occurring to change that relation. It is true, he held the Crane notes for a short time, and drew some interest upon them; but he disclaims any interest in those notes, and denies that they were received in exchange for the certificate. There was nothing in the giving up of the Crane notes, therefore, which, according to the plaintiff's testimony, can be construed into an advancement of a

part of the purchase price of the abstract at the time of the purchase. On the contrary, he seems to have been entirely ignorant of the purchase at the time it occurred, and at no time, until just before the commencement of this action, assumed to be one of the purchasers.

The relation of debtor and creditor, therefore, continued for nearly a year after such purchase, and to the time of the execution and delivery of the written instrument in question. Is there anything in the wording of that instrument which indicates that that relation then terminated? It does not say that the $1,000 was received for the purpose of purchasing a one sixth interest in the abstract *for the plaintiff*, but for the purpose of purchasing of Noyes "an undivided *one half* interest in the abstract for $3,000;" which indicates that *Humphrey* was to purchase for himself, and that recital is made, as appears from another recital in the same instrument, nearly a year after *Humphrey* had purchased such half interest and taken a bill of sale therefor in his own name. At the time the written instrument was given, as we have seen, the relation of debtor and creditor had existed between the parties for more than eighteen months, and there is nothing in that instrument indicating any intention to extinguish such debt or such relation; but, on the contrary, the transfer of the one sixth interest to the plaintiff was expressly coupled with the right in *Humphrey*, " in lieu thereof, *to pay* to him (the plaintiff) the said sum of $1,000, and *the interest thereon* at the rate of ten per cent. per annum until paid." And hence we must, on the principles of the authorities cited, hold that the instrument was taken as security for an existing indebtedness merely. Certainly the evidence of a contrary intention is not so clear and preponderating as to authorize this court to disturb the finding of the circuit court to that effect. This may work a severe hardship to the plaintiff, but this court cannot make contracts for parties, nor act as the guardian of adults who

are in possession of their mental faculties. Being a chattel mortgage, it was, under the statute, invalid as against any other person than the parties thereto until it was filed with the clerk, February 24, 1877. Sec. 2313, R. S.; sec. 9, ch. 107, R. S. 1858; *Maier v. Davis, ante*, p. 212, and cases there cited.

This being so, the mortgage given to *Curtis*, and filed January 11, 1877, became a first lien upon *Humphrey's* interest in the abstract. The plaintiff's mortgage being subsequently filed, became a lien thereon subsequent to and subject to the *Curtis* mortgage. Did the *Curtis* mortgage so filed cease to be such prior lien by reason of the failure to renew it within the two years? The language of the statute is that "such mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of two years from the filing of the same," unless renewed, etc. Sec. 2315, R. S.; sec. 5, ch. 45, R. S., 1858; ch. 69, Laws of 1872. This section only made the *Curtis* mortgage invalid as to subsequent purchasers or mortgagees in good faith, or creditors who should thereafter seize the property. This is abundantly shown by the recent case of *Lowe v. Wing*, 56 Wis., 31. It is enough to say that the plaintiff is not a subsequent, but a prior, mortgagee, and hence his rights, as against the *Curtis* mortgage, were no better after the filing of his mortgage than before.

For the reasons given the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.