JULIA A. CALHOUN v. WILSON LUMPKIN, EX'R, ET AL.

(Case No. 1500.)

.. MORTGAGE.— In determining whether what purports to be a sale of land amounts to a sale or is a mortgage, equity will look to the intention of the parties, to be gathered from their situation and conduct, and all surrounding facts, as well as to the written memorials of the contract. If the relation of debtor and creditor existed when the deed was made, and which it assumed to cancel, then whether the transaction would be regarded as a conveyance

absolute or a conditional sale would depend on whether the debt was abso-
lutely satisfied by the deed, or whether the apparent vendee still had a right
of action against the vendor on his debt.   Citing Conway v. Alexander, 7
Cranch, 218; 2 Edw. Ch., 138, and 6 Paige, 480.

2.  SAME.— When a debt forms the consideration for a deed, and there is no
agreement at the time for a repurchase, the amount paid being a fair value
for the property, and afterwards there is an agreement for reconveyance on
the payment of the precise sum to which the old debt would have amounted
had it not been paid, the case becomes a strong one to show that no mort-
gage was intended between the parties.

3.  EQUITY.— Before a mortgagor can recover property mortgaged, of which the
mortgagee is rightfully in possession, he must tender the amount of money
due on the mortgage.   Following Morrow v. Morgan, 48 Tex., 304; Hannay
v. Thompson, 14 Tex., 142.


APPEAL from Anderson.   Tried below before the Hon. Peyton F.
Edwards.

*Marsh Glenn*, for appellant.

*Gammage & Gregg*, for appellee.

WILLIE, CHIEF JUSTICE.— This suit was brought by Julia A.
Calhoun for the purpose of canceling a deed made by herself and
husband to Wilson Lumpkin, she alleging that it was a mortgage
upon her homestead, executed since the adoption of the constitution
of 1876, and therefore void.   Watts was made a party defendant,
because, as plaintiff alleged, he had, subsequently to the execution
of the deed, purchased the premises of Lumpkin with full knowledge
of plaintiff's rights and of the character of the instrument under which
Lumpkin held the property.   Defendant Watts pleaded not guilty,
suggested improvements made in good faith, and prayed that if the
prayer of plaintiff should be granted that he be subrogated to the
rights of Lumpkin, under a deed of trust formerly held by Lumpkin
on the property, and in lieu of which, it was alleged by plaintiff,
the deed sought to be canceled had been given; and that it be
foreclosed for his benefit, and the land sold in satisfaction of the
same.   He also denied notice of any secret trust held in the premises
by plaintiff or her husband; pleaded the statute of limitation of
three years; and also averred that, if Lumpkin conveyed the land by
bond for title to Calhoun, as was averred in the petition, the latter
had made default in payment of the purchase money, and the con-
tract was executory and abandoned by all the parties to it before
the conveyance to him by Lumpkin.

The cause was submitted to the judge below, no jury having been

demanded, and judgment was by him rendered for defendants. The evidence introduced upon the trial was very conflicting, and material portions of it wholly irreconcilable. In such cases the same effect is given to the finding of the judge as to the verdict of a jury in suits tried before them; and in the present case we could not reverse the judgment although the plaintiff's evidence had made out a clear case for the relief she sought, if that of the defendants sustained the judgment of the court in denying such relief.

The following are the conclusions of fact and law found by the court:

1. On the 19th of April, 1873, appellant and husband executed the deed of trust to Lumpkin, named in plaintiff's bill, on the lots of land described in the petition.

2. That on the 22d of September, 1877, Calhoun and wife (appellant) conveyed the lots of land to Wilson Lumpkin, executor, in full payment of the balance of the note, principal and interest, secured by said deed of trust to Shumatte.

3. That on the 3d of October, 1877, Lumpkin, as executor, executed a bond for title to D. A. Calhoun, agreeing to convey all of said lands and lots to Calhoun upon his paying a certain sum of money on the 1st day of January, 1878, said sum being understood and intended to be the same in amount as the balance due on the note secured by trust deed to Shumatte.

4. That the sale from Calhoun and wife to Lumpkin, of 22d September, 1877, and bond for title from Lumpkin to Calhoun, was a conditional sale to Lumpkin to secure the payment of the amount due on said debt.

5. That the said lots sued for were not homestead of plaintiff at the time of execution of said conveyance, September 22, 1877.

6. On the 6th of February, 1880, Lumpkin sold the lots sued for to J. F. Watts, and at that time Watts had notice of sufficient facts to put him upon inquiry as to plaintiff's claim.

Upon the law the court finds:

1. The property not being a homestead, and the plaintiff not tendering the money due, cannot recover.

2. Even if it was a homestead, the conveyance made on the 22d of September, 1877, was but a change of a valid security, made in 1873, and would not be void as an independent attempt to create a lien upon the homestead.

The theory of the appellant's case which she endeavored to sustain by proof was, that the property in controversy was her homestead on the 22d of September, 1877, and could not be incumbered

by a mortgage such as was created by the deed of that date executed by herself and her husband in favor of Lumpkin. To sustain this theory it became necessary for her to prove: 1st. That the deed, though absolute in form, was intended to operate as a mortgage, and not as a deed either conditional or unconditional. 2d. That the property was her homestead at the date of the execution of the instrument. These two facts at least should have been established by her, and the failure to prove either of them would have been fatal to her cause. For if the sale was even a conditional one, it was abundantly shown that the condition had never been complied with, and she did not claim to the contrary; and if the deed was in fact a mortgage, but the property was not her homestead when it was executed, she could not recover against a defendant rightfully in possession without tendering the amount due on the mortgage.

The testimony of defendants, which must have been credited by the district judge, established clearly these facts: 1. That the deed of September 22, 1877, was understood by the parties to it to be an absolute sale, and not a mortgage. 2. That at and before the time of the execution of this deed there was no understanding between them that the bond for title subsequently made was to be executed by Lumpkin. In fact, the understanding was directly to the contrary, and no conditions other than the surrender of the note and extinguishment of the debt were agreed on. 3. The note which Lumpkin held against Calhoun was actually delivered up and canceled, and no debt was held or claimed by the former against the latter until the subsequent note and bond were made between the parties. 4. This bond and note were made some days after the execution of the deed, and this was done as a matter of favor by Lumpkin because Calhoun wanted an opportunity to get the land back; and it was not done in pursuance of any previous agreement. 5. The amount which Lumpkin paid for the property, as also the amount which Calhoun was to pay under the bond for title, was about its true value. 6. The vendee was, by the understanding of the parties, to have the possession of the property, and the vendors were not to regain it unless they paid the purchase money within a given time. Whilst one or perhaps several of these facts might appear in such a transaction and it still be a mortgage, yet when they all concur the court would be fully justified in finding it at least a conditional sale.

In determining whether a given transaction amounts to a sale or a mortgage, courts of equity must look to the intention of the parties to be gathered from their situation and conduct, the surround-

ing facts as well as the written memorials of the contract. Cornell
v. Hall, 22 Mich., 377, 383. If the relation of debtor and creditor
previously existed one question to be considered is: Does it still
exist between the parties? In this case such a relation did exist at
the date of the deed, but the testimony shows that it was extin-
guished by agreement, and by a subsequent contract Calhoun had
the mere privilege of refunding the money by a given time and
receiving a reconveyance. This has been frequently held to con-
stitute the transaction a conditional sale. Robinson v. Cropsey, 2
Edw. Ch., 138; also 6 Paige, 480; Thompson v. Chumney, 8 Tex.,
389; Ruffier v. Womack, 30 Tex., 342, 343.

It is a good test as to the relation of creditor and debtor to ascer-
tain whether or not the apparent vendee has any right of action
against the vendor for the money which formed the consideration
of the conveyance. Conway v. Alexander, 7 Cranch, 218. Here it
appears from the proof that after the deed was made by Calhoun
and wife, and Lumpkin canceled the note, the latter had no remedy
whatever against the former parties to recover against them for any
portion of the debt secured by the original deed of trust.

The relation of debtor and creditor again commenced between
them on the 3d of October afterwards, so soon as the bond for title
and note for the purchase money were executed. Had this relation
been revived in accordance with a previous arrangement between
the parties made at the time the latter was executed, it would have
been a fact strongly showing that a mortgage was intended. But
the proof is, that the express understanding was directly to the con-
trary, and that the parties dealt with each other as if no previous
understanding had ever taken place between them. The fact
that Lumpkin agreed to sell the land to Calhoun for the precise sum
to which the old debt would have amounted had it not been paid,
can make no difference. The agreement to sell was shown to be an
act of grace on the part of Lumpkin, and the consideration was
shown to be about equal to the value of the property. When we
add to these circumstances the fact that the property in the sale of
22d September, 1877, brought its full value, and that the vendee
took possession under his deed, the case becomes a very strong one
to show that no mortgage was intended between the parties.

In all controversies as to whether an instrument is a mortgage or
a sale the decision must rest upon the peculiar circumstances of the
case (Cornell v. Hall, supra), and the proof or want of proof of one
fact may be sufficient to turn the scale in favor of one or the other
of these instruments. In the case of Ruffier v. Womack, 30 Tex.,

332, this court reversed the judgment below because the judge, in his charge, made the question of sale or mortgage to turn upon whether or not the original evidence of indebtedness had been canceled, and not upon the existence or non-existence of the debt itself. Had the extinguishment of the debt been made the test, we are led to believe, from the reasoning of the court, that the judgment would have been affirmed. In this case the debt was paid, and it has, in addition to the facts proved on that trial, the additional facts of a fair price being paid for the property and possession given to the vendee in accordance with the deed. The transaction has all the appearance of a conditional sale, and when that is the case the evidence should be very clear to convert it into a mortgage; and we cannot say that the district judge erred in holding that the present was a conditional sale upon the facts proven. 1 Jones on Mort., § 260.

But admitting that the proof sufficed to show the transaction a mortgage, still the appellant could not recover, because she did not offer in her pleadings to pay the debt which the mortgage was given to secure. Divested of all homestead questions, it is very clear that before a mortgagor can recover possession of property of which the mortgagee is rightfully in possession, he must tender the amount of money due on the mortgage. Morrow v. Morgan, 48 Tex., 304; Hannay v. Thompson, 14 Tex., 142. Where the possession is unlawfully obtained, of course no such tender is necessary; as by an illegal foreclosure of the mortgage (Morrow v. Morgan, *supra*); or by tampering with the mortgagor's tenant and inducing him to yield up possession or attorn to the mortgagee. Loving v. Milliken, 2 Tex. Law Review, 7.

Here possession was yielded by the mortgagor to the mortgagee, as if he were entitled to it under the terms of the agreement, and no question as to his right of possession was ever made. In fact it seems that it was part of the agreement itself, as interpreted by both parties. Nor did the claim of homestead set up by the appellant relieve her of the necessity of making this tender, for she did not establish that claim by proof. Her husband bought the place in 1865, and they took up their residence upon it, but lived there only two years. They then moved to the residence of her father and mother, and whilst residing there her father gave her the Kline place. They subsequently removed to this place and resided there, and never afterwards at any time occupied the premises in controversy. Their homestead could have been fixed as well upon the Kline place as upon the other, for it was her property by fee simple

title; and from the testimony of defendant's witnesses, it does not seem that she claimed the place in suit as a homestead after she moved from it. She did not have it set aside to her as a homestead by the county court in the course of administering her husband's estate, and said nothing to the defendant Lumpkin or his attorney about it when the transaction was occurring in which her husband obtained money from him by a mortgage upon these premises. This view of the case dispenses with the necessity of considering the question as to whether the conveyance of September 22, 1877, was an independent attempt to create a lien upon a homestead, or a mere change of securities.

The other assignments of error are either abandoned in the brief of appellant's counsel, or are not made in such manner as under the rules to require our consideration.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered October 19, 1883.]