### RINCON INV. CO. et al. v. WHITE et al.

### No. 9702.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1936.

Rehearing Denied Dec. 17, 1936.

Andrews, Kelley, Kurth & Campbell and J. L. Lockett, all of Houston, W. B. Moss, of Sinton, and John C. North, of Corpus Christi, for appellants.

Sidney P. Chandler, of Corpus Christi, and W. T. Scarborough, of Kenedy, for appellees.

SMITH, Chief Justice.

This is the second appeal in this case, 54 S.W.(2d) 1052. In the first appeal writ of error was dismissed by the Supreme Court for want of jurisdiction. There is but little, if any, material difference between the records in the two appeals. The record is quite voluminous, embracing a great mass of verbose and irrelevant pleadings and evidence.

On October 1, 1926, Philip Welhausen and W. C. Driscoll, doing business under the firm name of Welhausen and Driscoll, purchased, from Harvey and Ray, 15,000 acres of land in San Patricio and Aransas counties. The purchase was made through the agency of White and Fry, a firm composed of C. S. White and L. A. Fry, who were to be paid a commission of $15,000 by Welhausen and Driscoll. The consideration for the land was $20 per acre, aggregating $300,000, $15,000 in cash and $285,000 in vendor's lien notes. Welhausen and Driscoll paid the cash consideration of $15,000, and one of the vendor's lien notes, for $50,000, leaving a balance of $235,000 outstanding.

White and Fry in turn agreed to purchase 4,500 acres of the same land from Welhausen and Driscoll, consisting of a specified 3,200 acres in one block, and of two sections, aggregating 1,300 acres, one section to be selected by Welhausen and Driscoll and the other by White and Fry, for which White and Fry were to pay $20 per acre, the price Welhausen and Driscoll had paid therefor. In pursuance of this agreement Welhausen and Driscoll con-

veyed the 3,200-acre block to White and Fry, for a cash consideration of $15,000 ($5,000 of which was paid in cash and $10,000 credited upon their said commission) and three vendor's lien notes aggregating $55,000. No part of these notes was ever paid. The parties among themselves designated sections 65 and 68 as the remaining 1,300 acres to be taken by White and Fry, at the same price of $20 per acre, but no conveyance thereof was ever demanded or made, nor did White and Fry ever pay, or assume in writing to pay, any part of the intended consideration therefor.

Upon acquiring the land, Welhausen and Driscoll and White and Fry entered into an agreement to subdivide and improve the lands for colonization purposes, at the expense of Welhausen and Driscoll, and sell the same in parcels. The work of improving the lands proceeded, but the parties soon ran out of funds, and being unable to borrow more, discontinued the work, after the sale of one or two tracts, on credit. The parties then hit upon the scheme of making contracts with others to purchase small tracts, upon Welhausen and Driscoll's obligation to improve the land so sold. Many such contracts were made in the early part of 1928, the prospective purchasers agreeing to execute their notes therefor, to be secured by deeds of trust, at the price of $100 per acre, payable in eight annual installments, and Welhausen and Driscoll agreeing to put certain specified valuable improvements upon the land as purchased. These contracts were made, indiscriminately, for the sale of lands owned by Welhausen and Driscoll and White and Fry. But all the contracts were made in the name of Welhausen and Driscoll, and subject to their approval. None of them were made in the name of White and Fry, who assumed no obligations in the transactions. In procuring such contracts they acted for, and in the name of, Welhausen and Driscoll. The plan seems to have been to use these contracts in procuring loans with which to make the promised improvements.

At this juncture Welhausen and Driscoll got into financial difficulties which jeopardized the Yoakum State Bank and other affiliated, or subsidiary, banks in that section, which were owned by Welhausen and Driscoll. In order to save them from collapse, Welhausen and Driscoll sought to raise $200,000 with which to bolster the tottering banks. They approached Jesse Jones, president of Bankers' Mortgage Company, and other capitalists interested in preventing bank failures in that section, particularly on the eve of the meeting of the National Democratic Convention, soon to convene in Houston. After negotiations, Jones tentatively agreed, through Bankers' Mortgage Company, to purchase from Welhausen and Driscoll the block of 15,000 acres of land acquired by Welhausen and Driscoll from Harvey and Ray, less 2,000 acres which had been encumbered by Welhausen and Driscoll, for a cash consideration of $100,000, and the assumption of the outstanding vendor's lien against the land, then aggregating $235,000, and $17,000 interest. White and Fry testified, and the fact must therefore be assumed, that Welhausen and Driscoll told White and Fry that the proposed transaction with Bankers' Mortgage Company was intended as a loan to Welhausen and Driscoll of $100,000, with which Welhausen and Driscoll were to carry out the recently procured contracts between them and numerous third parties who had contracted to purchase, entirely on credit, various parcels of the land (including some of the 3,200 acres belonging to White and Fry) at $100 an acre, upon Welhausen and Driscoll's reciprocal obligation to place stipulated substantial improvements upon the parcels. The evidence showed, however, that if Welhausen and Driscoll did in fact make such representation to White and Fry (which was vigorously denied by Welhausen), the Mortgage Company had no knowledge thereof.

In pursuance of the tentative agreement whereby the Mortgage Company was to purchase the 13,000-acre block from Welhausen and Driscoll, the Mortgage Company's attorneys examined abstract of title to the land, which disclosed the outstanding conveyance of the 3,200 acres from Welhausen and Driscoll to White and Fry, whereupon the Mortgage Company advised Welhausen and Driscoll that it would not make the deal, or pay the stipulated consideration, except for the total acreage of 13,000, including said 3,200 acres theretofore conveyed to White and Fry. To meet that ultimatum Welhausen and Driscoll and White and Fry made a private agreement whereby White and Fry conveyed that acreage to Welhausen and Driscoll for a recited consideration of $10,000 cash, and the cancellation of vendor's lien notes for $55,000 which White and Fry had previously executed as part of the purchase price they were obligated to pay Welhausen and Driscoll. This obstacle being removed, Welhausen and Driscoll and the Mortgage

Company proceeded with the negotiations, to which end a conference between Welhausen and the Mortgage Company officials was arranged for April 6, 1928, in the offices of the Mortgage Company's attorneys in Houston. With that meeting in mind, Welhausen wired White and Fry to forward to him at Houston their deed to the 3,200 acres, executed by them and their respective wives. Fearing that Welhausen and Driscoll would not "take care of their interests" by paying to them $10,000 in cash out of the $100,000 they were to receive in cash from the Mortgage Company, White and Fry, who resided in Corpus Christi, in person, took their deed to Houston, where they met Welhausen on the morning of April 6. On that morning White and Fry and Welhausen concluded their private agreement whereby White and Fry delivered their deed conveying said 3,200 acres to Welhausen and Driscoll by general warranty deed, reciting a consideration of $10,000 cash paid, and the cancellation of their notes for $55,000. Welhausen agreed to pay White and Fry the $10,000 cash out of the $100,000 he was to get in cash from the Mortgage Company. With this private understanding between them, White and Fry and Welhausen met with the officials of the Mortgage Company and the sale of the 13,000 acres by Welhausen and Driscoll to the Rincon Investment Company, a subsidiary of the Mortgage Company and its nominee, was completed, for the consideration previously agreed upon, to wit, $100,000 cash, and the assumption by the grantee of $235,000 vendor's lien notes outstanding against the land, with interest. During the final negotiations between the parties, at which White and Fry were present, something was said about White and Fry, or one of their associates, having some sort of claim of interest or commission concerning the land involved, and the negotiations were thereupon suspended by the Investment Company as purchaser, which refused to proceed in the face of that question, which was thereupon removed from the matter by written quitclaims, or releases, then and there executed and acknowledged by White and Fry and their said associates, by separate instruments. The instrument executed by White and Fry was to the effect that they "Have released, remised, and quitclaimed, and do by these presents release, remise, and quitclaim unto Philip Welhausen and M. C. Driscoll all and every claim that we may have for commission or compensation or expense of any character for or on account of or in connection with the procurement of any purchaser or of any contract to purchase any part of those certain lots, tracts, or parcels of land (being the 13000 acres of land purchased from Welhausen and Driscoll by the Investment Company), * * * it being understood that this release and acknowledgment is executed and accepted as the basis and inducement for Rincon Investment Company to purchase (said lands) from Philip Welhausen and M. C. Driscoll, * * * upon the understanding and belief that there are no unsatisfied claims held by the undersigned for or on account of or in connection with said property or any part thereof."

Upon the execution, acknowledgment, and delivery of that instrument the main transaction was finally consummated as agreed, whereby Welhausen and Driscoll conveyed to Rincon Investment Company the 13,000 acres, including the 3,200 acres White and Fry had conveyed to Welhausen and Driscoll by deed they then and there, in person, delivered to the representatives of the Investment Company, and also including sections 65 and 68, heretofore mentioned. In due course the Investment Company paid over to Welhausen and Driscoll the cash consideration of $100,000, and also timely paid off the outstanding vendor's lien notes assumed by it in the purchase, aggregating $235,000 and interest. Welhausen and Driscoll did not then or thereafter, as they had agreed, pay White and Fry the $10,000 cash consideration provided in the conveyance of the 3,200 acres from White and Fry, but did cancel and return to White and Fry, and the latter accepted, the $55,000 vendor's lien notes they had executed as the balance of the consideration for said conveyance.

Contemporaneously with the main transaction, the Investment Company entered into a contract with Welhausen, whereby he was given the exclusive agency, to run for a period of two years, for the sale of the lands in question, for which he was to receive two-thirds of the net profit of such sales, after deducting the purchase price paid by the Investment Company for the land, and all expenses incurred and paid by that company in improving and operating the property, such net profit to be ascertained and paid after all the lands had been sold out. In said contract the Investment Company obligated itself to carry out and perform the contracts theretofore ex-

ecutéd by Welhausen and Driscoll for sale of parcels of said lands to third parties, and to receive the consideration said parties had obligated themselves to pay Welhausen and Driscoll. White and Fry testified, and this court must assume, that Welhausen privately agreed to give them his two-thirds of the net profit to accrue to him, under his agency contract with the Investment Company, upon the land they had conveyed to him, and they were to look to him for such profits, but the Investment Company had no knowledge of such agreement.

The purchase of the 13,000 acres by the Investment Company from Welhausen and Driscoll having been completed, the Investment Company paid the $100,000 cash consideration to Welhausen and Driscoll, and all the papers in the transaction were delivered. Welhausen took charge of the lands as sales agent. The Investment Company also proceeded, at an expense to it of several hundred thousand dollars in cash, to place improvements upon said lands, in performance of Welhausen and Driscoll's obligation to numerous persons who had previously contracted with them to purchase said lands upon their agreement to so improve them. It transpired in course of time, however, that none of those purchasers carried out their contracts of purchase, and in consequence the entire acreage was left on the Investment Company's hands. The record further shows that the Investment Company not only paid the $100,000 cash for said 13,000 acres, but also paid off the outstanding vendor's lien thereon, in the sum of $372,000, including interest, of which $138,000 was applied to the extinguishment of that encumbrance upon the 4,500 acres claimed by White and Fry, 3,200 of which had been conveyed to them by Welhausen and Driscoll, and by them, in turn, reconveyed to Welhausen and Driscoll and included in the 13,000 acres purchased from Welhausen and Driscoll by the Investment Company, and sections 65 and 68, which White and Fry were to purchase, in 1920, from Welhausen and Driscoll, but which were never conveyed to them, and for which they never contracted to pay. This cost, to the Investment Company, of the 4,500 acres claimed by White and Fry, plus the taxes paid and improvements put upon the land, aggregated over $300,000, for no part of which the Investment Company has been reimbursed, nor have White and Fry offered to pay all or any part thereof

The foregoing constitutes a mere skeleton of the facts in the case, which have been eked out of a 668-page statement of facts, which we have been obliged to read throughout, some of it over and over again, to get at the true facts, upon which counsel have almost uniformly disagreed. Appellants have filed a 134-page printed brief, to which appellees have replied with a 208-page typewritten brief.

In their trial pleadings White and Fry sued the Mortgage Company and the Investment Company in trespass to try title to recover title and possession of the 3,200-acre tract conveyed to them by Welhausen and Driscoll and by them reconveyed to Welhausen and Driscoll, who in turn conveyed it to the Investment Company, as well as of sections 65 and 68, which had never been conveyed to them, making 4,500 acres in all. They also pleaded that their deed conveying said 3,200 acres to Welhausen and Driscoll and the latter's conveyance to the Investment Company, were not intended as deeds in fact, but as a mortgage, merely, and that the Investment Company was to hold title in trust for them pending various contingencies vaguely defined; that the Investment Company's sales contract with Welhausen was made for their benefit, whereby they were to receive the stipulated two-thirds net profits of sales, in proportion to their 4,500 acres; that the obligation assumed by the Investment Company in its contract with purchasers, to carry out Welhausen and Driscoll's prior contracts with third parties to purchase various parcels of said 13,000 acres, was made for the benefit of White and Fry, in so far as it affected said 4,500 acres, and that had the Investment Company carried out that contract, said sales would have been completed and they would have been entitled to $324,000 profit, but that the Investment Company had provoked said third parties to abandon said contracts of purchase, to White and Fry's damage in said sum of $324,000. Such were the main contentions in White and Fry's pleadings, which cover approximately 40 pages in the transcript, embracing innumerable other causes of action, including a claim for $35,000 alleged to be due them out of the $100,000 cash consideration paid Welhausen and Driscoll.

The case was submitted to a jury upon 36 special issues, all of which were answered favorably to White and Fry, and upon those answers the trial court rendered judgment along the lines prayed for by

**394**

White and Fry, except that their net damages were fixed at less than $100,000, instead of approximately a half million, for which they sued. The judgment included a decree that White and Fry recover the title and possession of the 4,500 acres claimed by them, freed of all encumbrances and costs of improvements, which the Investment Company had paid in sums aggregating over $300,000, and for which White and Fry had paid nothing, except $5,000 in cash to Welhausen and Driscoll, and $10,000 commission credited to them by Welhausen and Driscoll, on the purchase price. Their vendor's lien notes for $55,000 had been canceled and returned to and accepted by them when they reconveyed the 3,200 acres to Welhausen and Driscoll. Sections 65 and 68, which they also recovered, had never been conveyed to them; they had never become obligated to pay for them, and never paid any consideration for them, although they were obligated, as a condition to their claim of title, to pay $20 per acre for the 4,500 acres. From the judgment in White and Fry's favor, as described, Rincon Investment Company and Bankers' Mortgage Company have brought this appeal.

The controlling contentions of appellees are embraced in their claim that their deed conveying the 3,200 acres to Welhausen and Driscoll, and the latter's deed to the Investment Company, were intended as a mortgage and not a deed, and the further claim that the sales contract given Welhausen by the Investment Company was made for the benefit of appellees, with the Investment Company's knowledge and consent thereto. If those contentions are without support in the record, then appellees had no cause of action, and judgment should have been rendered that they recover nothing.

■ In the former appeal this court held that the evidence was insufficient to show that said deed was intended as a mortgage, or that the sales contract between the Investment Company and Welhausen was made for the benefit of White and Fry, with notice to the Investment Company of that interest. There is no material difference between the evidence in the former trial, and that adduced at the last trial, upon those controlling issues, and in that situation this court has no alternative but to set aside the judgment now before it in this appeal. The reasons for that conclusion are so forcefully set forth in the opinion of Chief Justice Fly in the

former appeal, that we readopt those conclusions as stated by him (54 S.W.(2d) 1052):

■ "The statement of facts in this case is long and tedious, and a thorough scrutiny of it would consume more time than can be given to it. We shall assume that the summaries of the testimony made by appellants and appellees, considered together, contain all the salient pertinent facts in the record. In those summaries we fail to discover a single fact tending to show that the instruments, deeds on their faces, were intended to constitute a mortgage and not a full conveyance of the title to the lands. There is nothing in the contract of agency between appellant and Welhausen and Driscoll that tends to show that the deeds were intended as a mortgage. No privity of contract appears to have existed at any time between appellant and appellees. The latter deals with Welhausen and Driscoll and possibly with the mortgage company, but not with appellant. One of the appellees testified that Welhausen and Driscoll were their agents through the whole of the dealings. They were never the agents of appellant until after the completion of the whole transaction, when they were employed to sell the land for appellant. The evidence fails to show that appellants had any knowledge of the transactions between Welhausen and appellees. The issue as to appellants agreeing to an arrangement to receive a deed, which in truth and fact was to be a mortgage, was the vital issue in the case. Evidence introduced to change the nature and effect of a written instrument should be scrutinized with the greatest care, and should not be given effect without clearly establishing the desired change. No presumptions nor inferences can be indulged in favor of such testimony, as it is an invasion of the rule as to the impeachment and destruction of solemn instruments in writing by the evidence of interested and prejudiced oral testimony. The issue should have been affirmatively presented to the jury for their consideration. The agreements of Welhausen and Driscoll, made without the knowledge and consent of the Rincon Investment Company, before it purchased the land, should not determine the case against that corporation. Mr. White swore, 'Mr. Welhausen was representing us all through the deal.' This reveals a case in which a party who neither in person, nor by agent, agreed to changing the deed into a mortgage, is adjudged by the court to have been

a party to the change. After the land had been sold to Rincon Investment Company, and it had employed Welhausen and Driscoll to sell the land, White admitted that his firm was to receive part of the commissions for the sale of the land. The testimony of White clearly established that Welhausen and Driscoll were the agents of appellees throughout the entire transaction, and they did not inform any one before they left Houston, after the deeds were executed, of any claim that they constituted a mortgage. The failure to show knowledge of or participation in any agreement as to the deeds being intended as a mortgage was brought to the attention of the court by the motion for judgment. Equity will not transform a deed into a mortgage without clear and cogent proof to that effect. Calhoun v. Lumpkin, 60 Tex. 185; Webb v. Burney, 70 Tex. 322, 7 S.W. 841.

"The rule is thus stated in Pomeroy, Eq. Jur. § 1196: 'Any conveyance of land absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase, or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties, and as against all those deriving title from or under the grantee, who are not bona fide purchasers for value and without notice. * * * * The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail.'

 "There were no transactions between appellant and appellees, nor any one authorized to represent them. The evidence tended to show that the investment company was an innocent purchaser for value without notice, and as such could not have the deed transformed into a mortgage because of an agreement between third parties. * * *

"It is probable that the matters complained of in the remaining propositions will not occur on another trial of the cause. There was no evidence binding appellant as to a mortgage, rents, or any other matter.

"The court, after destroying the deed, proceeded to render a judgment for damages, for which there was no justification in law or support in the evidence.

"We have deemed it best to return the cause for another and proper trial, rather than to render judgment here, and consequently the judgment will be reversed, and the cause remanded."

■ The transactions involved had none of the elements of a mortgage. The relation of debtor and creditor had never existed and were not created by these transactions, between appellants and appellees. The transactions were wholly between appellants and Welhausen and Driscoll, except that appellees, in order to aid Welhausen and Driscoll in making the sale to appellants, quitclaimed and released all interest they then had or that had ever existed in the lands in controversy. The agreements between Welhausen and Driscoll and appellees, upon which, alone, appellees admittedly depend for recovery, were made privately, and the evidence is wholly insufficient to show that appellants assumed, or intended to assume, or had any knowledge of, the obligation of Welhausen and Driscoll to White and Fry.

There is no occasion to prolong this opinion. The facts are clear, convincing, and fully developed, wherefore, the judgment must be reversed, and judgment will be here rendered that appellees recover nothing of appellants, and pay all costs of the litigation.

Reversed and rendered.